439 So.2d 629 (1983)
STATE of Louisiana
v.
Gregory O. THOMAS.
No. 83 KA 0188.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
*630 Ossie Brown, Dist. Atty. by Joseph Lotwick, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Johnny Wellons, Baton Rouge, for defendant-appellant.
Before COVINGTON, COLE and SAVOIE, JJ.
COLE, Judge.
Defendant, Gregory O'Neal Thomas, was charged by grand jury indictment with aggravated rape, armed robbery, and aggravated burglary in violation of La.R.S. 14:42, 64, and 60. Defendant was tried by a *631 twelve-man jury and found guilty on all counts. He received the maximum sentence possible on each count: for aggravated rape, life imprisonment at hard labor without benefit of probation, parole or suspension of sentence; for armed robbery, ninety-nine years at hard labor; for aggravated burglary, thirty years at hard labor. The sentences are to run concurrently. Defendant now appeals his convictions and sentences, alleging four assignments of error.

ASSIGNMENTS OF ERROR
1. The trial court erred by denying defendant's motion to suppress confession.
2. The trial court erred in denying defendant's motion for a new trial and motion in arrest of judgment[1] because the state failed to prove its case in that the victim failed to identify defendant as the offender.
3. The trial court erred in denying defendant's motion for a new trial and motion in arrest of judgment because the state failed to prove the elements of aggravated rape, armed robbery and aggravated burglary.
4. The trial court erred in failing to require the state to prove beyond a reasonable doubt all of the essential elements of the crimes charged.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial judge erred when he denied defendant's motion to suppress defendant's confession because such confession was obtained as a result of intimidation and threats made by the arresting officers.
In order for a confession to be admissible into evidence, it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451. See State v. Jackson, 381 So.2d 485 (La. 1980). The state has the burden of affirmatively proving that the confession was free and voluntary; accordingly, it must rebut specific testimony introduced by the defendant concerning factual circumstances which indicate coercive measures or intimidation. State v. Serrato, 424 So.2d 214 (La.1982). The admissibility of a confession is a question for the trial judge and his conclusions on credibility and the weight of testimony regarding the voluntariness of a confession for admissibility purposes will not be overturned on appeal unless they are unsupported by the evidence. State v. Haynie, 395 So.2d 669 (La.1981). The trial court is accorded much discretion in arriving at a conclusion of the voluntariness of defendant's confession, and such discretion of the trial court will not be overturned on appeal unless it is unsupported by the evidence. State v. Haynie, supra.
The admissibility of defendant's confession was amply litigated at the hearing on the motion to suppress. Defendant's allegation that the arresting officers intimidated and coerced him into making a confession by using threats is reflected in his testimony on trial of the motion. He testified the arresting officer told him: "If I wouldn't talk, I wouldn't live to see Christmas, just scared me like that...." "Well, they talking about like ... if I wouldn't talk, you know, when I get back to the Parish, you know, they have a gang waiting on me like that, you know, and...."
Both arresting officers testified defendant was given his Miranda rights before the taped statement was made. A week after defendant's arrest, and while he was in the parish prison, the arresting officer, Detective Groht, was told defendant wanted to make a statement and help the police recover the stolen items. On arrival at the parish jail, defendant began to give information concerning the stolen items. The officer requested that he not talk further until *632 they arrived at the downtown police station. Upon arrival, the detective again gave defendant his rights. After some discussion, defendant gave a statement which was taped in its entirety, and indicated to the officers he understood his rights and the procedure that was being followed. This testimony was supported by the other interrogating officer, Julius O'Brien. Both officers denied they had threatened defendant in any way or told him what to say. On rebuttal, both officers again testified no physical force or threats were used against defendant. Both officers made an effort to contact an attorney whose name was given to them by defendant, but no contact was made until after the taped statement was given. When contact was finally made, the attorney specifically said he was not going to represent defendant.
An analysis of the record convinces us sufficient evidence was presented by the state to rebut defendant's allegations of intimidation and of threats made to him to induce his making a confession. Therefore, this assignment of error has no merit.

ASSIGNMENTS OF ERROR NOS. 2, 3, AND 4
Defendant's assignments of error numbers 2, 3 and 4 are grounded on the lack of sufficient evidence at trial to support a verdict of guilty. Defendant assigns error to the denial by the trial court of defendant's motion for post-verdict judgment of acquittal (sic) and complains the evidence was insufficient to identify defendant as the party who attacked and raped the victim; that the record contains insufficient evidence to prove the elements of the crimes of aggravated rape, aggravated burglary, and armed robbery; and that the state has failed to bear the burden of proving beyond a reasonable doubt the elements of the crimes charged.
A defendant has not been afforded due process, and his conviction cannot stand, unless, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, we are governed by our statutory rule as to circumstantial evidence: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. La.R.S. 15:438; State v. Graham, 422 So.2d 123 (La.1982). Under the rationale in Jackson v. Virginia, supra, upon review for insufficiency of evidence to convict, the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Bennie G. Smith, 430 So.2d 31 (La.1983); State v. Brady, 414 So.2d 364 (La.1982).
Defendant argues the state failed to prove the identity of the offender, failed to prove specific intent, and failed to prove each element of the crimes charged.
The crime of aggravated rape, and the elements thereof, are set forth in La.R.S. 14:42, which reads in pertinent part as follows:
"Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; ..."
In determining if the state has met its burden of proving aggravated rape beyond a reasonable doubt, we must look at each element of the crime. First, it must be proven the defendant committed an act of sexual intercourse with the victim without the lawful consent of the victim. The victim testified on direct and cross examination the offender raped her and then tied *633 her arms and legs to her bed with belts from her dresses. Dr. Pine, the doctor who examined the victim at the hospital just after she was found tied to the bed and released, testified the victim had physical signs of having been raped, including bruises around the vagina and signs of having been beaten in the chest area. A test for seminal fluid showed the presence of such in the victim's vagina. The bed sheets taken by the police lab from the victim's bed also tested positive for seminal stains. Dr. Pine, qualified as an expert who had worked with rape victims for almost five years, concluded the victim had been raped.
Second, it was proven the victim was prevented from resisting the act of rape by threats of great and immediate bodily harm, accompanied by apparent power of execution. It should be noted the victim was 78 years old at the time of trial. She testified her assailant grabbed her by the shoulders and forced her to do his bidding when he entered the house. He threatened to kill her if she did not do what he said. He found a gun on her closet shelf, and held it, unloaded, by the butt and threatened to kill her. She tried to talk, but he slapped her in the face; she was too afraid to scream. She tried to fight off her attacker, but he raped her and subsequently tied her feet and hands to the bed posts. She believed he meant it when he said he would kill her. From other evidence presented at trial and the testimony of the victim, it is apparent a jury could infer the victim was prevented from resisting by threats of great and immediate harm and that the attacker was capable of and willing to carry out those threats. Therefore, the record contains sufficient evidence for a reasonable man to find beyond a reasonable doubt that aggravated rape had been committed.
The crime of aggravated burglary is defined by La.R.S. 14:60, which reads in part as follows:
"Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place."
We find that the elements of aggravated burglary have been proven by the state beyond a reasonable doubt, that is, that the offender made an unauthorized entry of an inhabited dwelling with intent to commit a felony or any theft therein and that the offender committed a battery upon a person while in such place. The victim testified the offender forced open the door of her home while she was attempting to close it, pushed her aside, grabbed her by each shoulder, and covered her mouth with a gloved hand so that she could not yell. While in her dwelling, he committed rape upon her, slapped her in the face, and bruised her chest. The assailant loaded up pillow cases with her china, silver and glassware, stole her jewelry out of her jewelry box, along with silver coins, a money market certificate, her credit cards and checkbook, and also took two rings which he removed from her fingers. He stated to her "I want $20,000 ...." and forced her to write four checks. It is thus apparent a burglary occurred under aggravated circumstances as enumerated in La.R.S. 14:60.
The definition of the crime of armed robbery is found at La.R.S. 14:64, which reads in pertinent part as follows:
"Armed robbery is the theft of any thing of value from the person of another or which is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon."
La.R.S. 14:2(3) defines "dangerous weapon" as follows:
"`Dangerous weapon' includes any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm."
*634 To convict a defendant of armed robbery, the elements which must be proven by the state are that the defendant stole something of value from the person of another, taking it by force or intimidation, and that the offender was armed with a dangerous weapon. Under the holding in State v. Levi, 259 La. 591, 250 So.2d 751 (1971), one may be convicted of robbery with a dangerous weapon even though the gun was not loaded. This is especially true in this case, where the victim was threatened with the butt of the gun. The victim testified the offender forced her to take off all her jewelry, which he took and placed in the pillow cases with the other articles which were stolen from her. When the intruder found the victim's gun, he threatened her with the butt of it, telling her she must do what he said, otherwise he would kill her. He carried her stereo system out of the house; later, that stereo system was found through an acquaintance of defendant. The rings taken off the victim's fingers were later pawned at a pawn shop by someone with the defendant's driver's license. Although the victim knew the gun was not loaded, she feared he would strike her with it. Therefore, we find the record contains sufficient evidence to sustain a verdict of guilty of armed robbery.
The only remaining question is whether or not the defendant was in fact the individual who committed these offenses as charged. Under the Jackson v. Virginia, supra, approach, the state is required to negate any reasonable possibility of misidentification in order to carry its burden of proof. The defendant argues since the victim was not able to identify him as her assailant, after having watched him for about two and one-half hours as he robbed her home, the state did not meet its burden of proof. The victim described her attacker as having "not a heavy beard but he had a beard."
The following exchange is recorded on cross examination of the victim:
"Q... Do you see that light complexioned person in the courtroom today? Do you see that light complexioned gentleman that raped you in the courtroom today?
A. He seemed a little lighter than this fellow here.
Q. Okay, but don'tdo you see that gentleman in the courtroom here today that raped you since you say he went in your kitchen, you watched him and stuff
A. No.
Q. He's not in the courtroom?
A. Uh-uh."
On direct examination, the victim testified her assailant said once or twice he "knew Neal and Rabbit."[2] Circumstantial evidence included two thumb prints matching defendant's thumb prints which were found, one on a broken pane of glass from the victim's house, the other on the window of victim's abandoned automobile, which had been stolen at the time of the incident in question. However, sixteen sets of prints were taken from the car; the other fifteen were not identified. The victim testified that some weeks prior to the incident the defendant had done yard work for her and she had driven him home.
The fact that the victim could not identify defendant as her assailant, either in the courtroom or prior to trial, when she had watched him for about three hours in her home, is consistent with defendant's innocence. Also, the fingerprint evidence must be viewed together with the testimony of the victim that the defendant had previously done yard work for her and she had driven him in her car.
The state based its case for identity of defendant on circumstantial evidence. Following the standard to be used for review of circumstantial evidence as set forth in La.R.S. 15:438 and State v. Graham, supra, we must conclude such evidence excludes *635 every reasonable hypothesis of defendant's innocence.
The hypothesis of defendant's innocence conflicts with several facts which the evidence tends to establish. Most incriminating is the confession wherein he admits the robbery. Although he never admits he committed rape, the inference that he was the rapist is overwhelming. No evidence was introduced at trial, nor did defendant allege, a second person was in the position to commit rape on the victim at the time the robbery and burglary were taking place. Defendant showed the police where he had taken the stolen items and several of these items were recovered. The testimony of Mrs. Claudia Johnson substantiated defendant's confession as did testimony by the owner of a pawn shop where defendant had pawned the rings taken from the victim's fingers. Mrs. Johnson testified the defendant was driving a dark blue car like the one stolen from Mrs. Sharp when he dropped off the stolen stereo system and glassware at her house, where some of the goods were later discovered. Likewise, the testimony of Mr. Glenn Mayeaux supported defendant's confession in that he corroborated defendant's statement that two "white boys" had picked him up and given him a ride to the vicinity of the crime only minutes before the crime occurred.
Other probative facts are defendant's finger prints found on the broken pane of glass from the victim's home and on the window of the victim's abandoned car. In addition, the tests for blood type which were conducted by the rape crime lab and serology clinic did not exclude defendant from the possibility of having been the victim's assailant. In fact, this evidence tends to prove that the victim's assailant could have been defendant since the assailant had type "O" blood, as did defendant. The circumstantial evidence seems to exclude any reasonable hypothesis of innocence.
Consequently, we conclude, assuming every fact to be proved that the evidence tends to prove, it does exclude every reasonable hypothesis of innocence, and is sufficient to support defendant's conviction. We can reach no other conclusion in light of all the facts before us.
There is no merit to these assignments of error.

PATENT ERROR
The defendant received a sentence on the armed robbery conviction of ninety-nine years at hard labor. This sentence is statutorily incorrect as the penalty clause of La.R.S. 14:64, entitled "Armed robbery," reads as follows:
"(B) Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and not more than ninety-nine years, without benefit of parole, probation or suspension of sentence." (Emphasis added.)
Since the sentence was not imposed without benefit of parole, probation or suspension, it is an illegal sentence. See La. Code Crim.P. arts. 882(1), 920; State v. Brown, 434 So.2d 1166 (La.App. 1st Cir. 1983); State v. Napoli, 428 So.2d 957 (La. App. 1st Cir.1983). However, a serious question exists as to whether or not this court may, ex proprio motu, review a patent error when the review mandates a result unfavorable to the defendant. (Obviously, the defendant is not going to raise the issue.) More precisely, may we correct a patently erroneous and illegal sentence which is adverse to the interests of the state when the state has not raised the issue? If we are to do so, a further question arises as to the subsequent procedure. Are we to vacate the sentence and remand for imposition of a legally correct sentence or should we, without further involvement of the trial court, amend the sentence to conform with the law?
It is clear to us articles 882 and 920 of the Code of Criminal Procedure, read in pari materia, provide us with ample authority to review the patent error before us. It is also clear the proper procedure is to remand the case to the trial court for resentencing. La.Code Crim.P. art. 882. Regardless, we are faced with conflicting signals from our *636 Supreme Court. On the one hand, we are told we cannot review a sentencing error favorable to defendant, as it is said to have a "chilling effect" on the exercise of his right to appeal. See, State v. Napoli, 437 So.2d 868, Supreme Court of Louisiana, No. 83-K-0667, On Application for Writs of Review, rendered September 2, 1983. On the other hand, as recent as January 10, 1983, our Supreme Court has itself corrected a sentencing error adverse to the state (favorable to the defendant) although the state did not raise the objection in the manner prescribed previously in another Supreme Court decision. See, State v. Telsee, 425 So.2d 1251 (La.1983). See also, State v. Speed, 335 So.2d 28 (La.1976).
The result obtained in Napoli and Telsee, respectively, represents conflicting applications of the law which can be resolved only by the Supreme Court. Another panel of this court has been simultaneously considering this same problem and has elected to follow Telsee. See, State v. Jackson, 349 So.2d 622 (La.App. 1st Cir.1983). We are impressed with the thoroughness of its opinion and believe the result is dictated by the jurisprudential and codal authorities relied upon therein. For these reasons assigned by our colleagues in Jackson, we too elect to follow Telsee.
Accordingly, we amend the sentence for armed robbery to provide it shall be served without benefit of parole, probation or suspension. In all other respects, the convictions and sentences are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED, WITH AMENDMENT.
NOTES
[1] Defendant has styled his motion for post-conviction relief as "Motion for Post Verdict Judgment of Acquittal." The grounds are that the evidence is insufficient to sustain a verdict of aggravated rape and armed robbery. We assume it was his intention to file a motion in arrest of judgment, pursuant to La.Code Crim.P. art. 859, and have treated his motion as such.
[2] Defendant is known as Neal; his middle name is O'Neal; Rabbit is the nickname of defendant's stepfather.