Ronald Charles **ROTTE**, Appellant,

v.

The **STATE** of Texas, State.

Nos. 2–88–239–CR, 2–88–240–CR.

Court of Appeals of Texas, Fort Worth.

Dec. 6, 1989.

Rehearing Overruled Jan. 9, 1990.

Alley & Alley, and Richard Alley, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and C. Chris Marshall, Asst., Fort Worth, for appellee.

Before JOE SPURLOCK, II, KELTNER and MEYERS, JJ.

## OPINION

KELTNER, Justice.

Appellant, Ronald Charles Rotte, was found guilty by a jury of the offenses of burglary and aggravated sexual assault. *See* TEX.PENAL CODE ANN. secs. 30.02, 22.011, and 22.02 (Vernon 1989). Punishment upon enhancement was assessed by the jury at fifty years confinement in the Texas Department of Corrections for burglary and a fine of $5,000, plus life in the Texas Department of Corrections and a $10,000 fine for the aggravated sexual as-

sault. He appeals both convictions and we write one opinion for both appeals.

The appellant brings three points of error contending: (1) there was insufficient evidence to support the judgment of guilty for the charge of burglary; (2) there was insufficient evidence to support the verdict of guilty for the charge of aggravated sexual assault; and, (3) there was no evidence to corroborate the accomplice witness testimony of Brian Rotte, and therefore, insufficient evidence to support the verdicts of guilty.

Despite the multiple points of error, the pivotal issue in this case is whether there was sufficient evidence to corroborate the testimony of the accomplice, Brian Rotte. We hold there is and affirm the judgment of the trial court.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution to consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Crim.App.1984); *Houston v. State,* 663 S.W.2d 455, 456 (Tex.Crim.App. 1984) (opinion on reh'g); *Wilson v. State,* 654 S.W.2d 465, 471–72 (Tex.Crim.App. 1983) (opinion on reh'g). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

However, reviewing the sufficiency of the evidence in a case where accomplice testimony is used requires an additional analysis. Article 38.14 of the Code of Criminal Procedure states:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

TEX.CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979).

The standard of review is to eliminate the accomplice's evidence and determine whether the other testimony provides "inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense." *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App.1988), citing *Edwards v. State,* 427 S.W.2d 629 (Tex.Crim. App.1968).

However, the Court of Criminal Appeals stated there is a great deal of flexibility in applying the standard because "each case must be considered on its own facts and circumstances." *Reed,* 744 S.W.2d at 126; *Mitchell v. State,* 650 S.W.2d 801, 807 (Tex. Crim.App.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984). It is clear that the corroborating evidence may be either circumstantial or direct. It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. *Reed,* 744 S.W.2d at 126.

Additionally, while merely showing the commission of the offense is not sufficient to corroborate the accomplice testimony, it is a factor to be considered along with other possible factors in determining whether there is sufficient independent evidence to corroborate the accomplice's testimony. *Id.* at 127; *Mitchell,* 650 S.W.2d at 807. Furthermore, evidence which merely goes to show opportunity of the accused to commit the crime is insufficient by itself to corroborate the accomplice witness. However, it may be considered in connection with other evidence tending to connect the accused to the crime. *Reed,* 744 S.W.2d at 127; *Mitchell,* 650 S.W.2d at 808. In summary, the corroborative evidence is sufficient if it tends to connect the accused to the crime, and "it is the cumulative weight of such evidence which supplies the test." *Reed,* 744 S.W.2d at 126; *Reynolds v. State,* 489 S.W.2d 866, 872 (Tex.Crim.App. 1972).

In this light, we review the evidence presented at the trial court.

The facts of this case turn on the actions of two brothers, Ronald Rotte, the appellant, and his brother, Brian Rotte, the accomplice, in burglarizing a residence in Arlington. The appellant did not testify. Instead, his brother testified against him, accusing appellant of burglarizing a residence and raping the victim. Pursuant to a plea bargain, Brian received five years in the Texas Department of Corrections for burglary in exchange for his testimony against appellant.

According to Brian, the two brothers decided to burglarize a home in Arlington. They found a house with an open garage door and entered the house through an unlocked door to the garage. While rummaging through the living room in search of items to steal, they were surprised by the victim, a twenty-nine year old schoolteacher and mother.

The victim testified that upon hearing noises that morning, she entered the hallway heading to her garage, and was knocked down by the intruders. Her hands were tied, and her eyes were covered. The two intruders carried her to the master bedroom. From this point forward, she testified that she kept her eyes closed, because she was afraid that if she ever saw her assailants and was able to identify them, they might kill her and her baby.

Throughout the subsequent attack, the victim heard two voices by which she was able to distinguish between the two intruders. She identified one speaker as that of her rapist and the other as his companion, who tried to prevent the rape. According to her testimony, one speaker told her that neither she nor her baby would be hurt; but a second speaker threatened that he was going to rape her and repeatedly asked about the location of guns in the house.

A dispute arose between the two intruders once the rapist announced his intentions. A scuffle ensued in which one of the intruders attempted to stop the would be rapist. Unfortunately, the dispute was resolved when the rapist forced the other intruder from the room. Thereafter, the rapist removed the victim's clothing and attempted to have intercourse with her.

Unable to achieve this, he forced her to engage in oral sex and afterwards, was able to force intercourse on her. After the assault, the rapist pulled a phone cord out of the wall and tied the victim's hands and feet together. He then demanded to know the whereabouts of her car keys, gathered the items he intended to steal, and left the room.

According to Brian, the brothers stole the victim's car and left with the stolen items. They later divided the spoils of the burglary. Brian kept one of the shotguns and appellant kept the rest.

Brian testified he informed the victim that neither she nor the baby would be hurt. He also stated that he attempted to prevent the rape and was involved in an altercation with his brother, the appellant. He testified that while the rape was occurring, he carried the baby into another room and fed her. However, he admitted to taking part in the burglary.

After the brothers left, the victim freed herself, collected her child, called the police, and fled to a neighbor's house. Shortly thereafter, she was taken to the hospital where a rape protocol exam was performed. The fluid removed from the back of her vagina was found to contain motile sperm. From this information, the examining physician concluded that sexual intercourse had occurred within the six previous hours. Tearing in the vaginal area was typical of trauma suffered during the course of a sexual assault involving an unwilling and unaroused victim.

The Rotte brothers were first linked to the burglary and assault when Brian sold one of the stolen shotguns. As a result of his arrest, he was questioned by police officers.

He confessed the burglary to the police and volunteered to take a blood test to show that he did not rape the victim. Forensic analysis was accomplished by blood tests taken from Brian, appellant, and the victim. All the blood samples were profiled as to blood type, secretion, and protein type. At trial, the results of the test were introduced as forensic evidence. Blood taken from Brian indicated it was type "O" blood that was of the "secretor" type and possessed a "PGM" or protein type of "1 + 2 +." Blood taken from appellant revealed it was type "B" blood, was of a "secretor" type, and possessed a "PGM" type of "1 + 2 +." Blood taken from the victim showed she had type "O" blood, which was of the "secretor" type and possessed a "PGM" type of "1 + 2 +." The seminal fluid extracted from the victim's vagina revealed a "PGM" of "1 + 2 +," and indicated the possibility of a "secretor" and contained the "B" antigen, which is indicative of type "B" blood. Based on this data, the State's expert witness testified that appellant was the only one of the three who could have contributed the "B" antigen to the fluid removed from the victim's vagina. The expert further stated the semen could not have come solely from the accomplice, Brian Rotte, since he lacked the "B" antigen.[1]

The expert further testified that based on recognized statistical studies, only 8½% of the general Caucasian population, inclusive of both males and females, could have contributed the blood samples which matched the three-fold characteristics taken from the vaginal sample. She further concluded that only 4.6% of all males in Tarrant County could have left the seminal fluid, and only between 2% and 3% of the Caucasian males in Tarrant County could have produced the semen.

The State relies upon this forensic evidence, together with the testimony of the victim, to corroborate the accomplice's testimony. We hold the combined force of this testimony is sufficient to corroborate the testimony of the accomplice.

■ We believe the scientific evidence which "tends to connect" a defendant to a crime is sufficient even if it speaks to *probability* rather than to certainty. Wehmhoefer, *Statistics in Litigation*, sec. 15.12 (1985). Quite simply, there is no reason why probabilistic evidence should not be used in criminal trials if the evidence is otherwise credible and its possibility for error is fairly presented.

1. The victim testified to rape by only one attacker.

We already use probabilistic evidence in criminal trials. For example, the number of points of comparison from fingerprint analysis is a form of probabilistic evidence. *Wallace v. State*, 458 S.W.2d 67, 71 (Tex. Crim.App.1970). Additionally, paternity tests, although not certain, have been used to demonstrate that a criminal defendant had access and raped a minor. *Barnhart v. State*, 716 S.W.2d 572, 578 (Tex.App.—Houston [1st Dist.] 1986, no pet.). Comparative blood tests have been used to demonstrate that blood residue at a crime scene possessed a combination of chemical elements found in only 1% of the "Chicano" population. *Gonzalez v. State*, 643 S.W.2d 751, 753 (Tex.App.—San Antonio 1982, no pet.).

Other jurisdictions have recognized that blood-group evidence which tends to make the existence of a fact more or less probable is admissible. *United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir.1986), *cert. denied*, 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987) (held that the trial court correctly admitted statistical evidence that only 12% of the male population shared the defendant's seminal characteristics); *People v. Thorin*, 126 Mich.App. 293, 336 N.W.2d 913, 916 (1983) (held that blood group evidence may corroborate other testimony to show that a defendant who is not seen by the victim was present at the scene of the crime); *State v. Thomas*, 439 So.2d 629, 635 (La.App. [1st Dist.] 1983), *rev'd in part on other grounds*, 452 So.2d 1177 (1984) (held that the defendant's blood type did not exclude him from participation in an alleged rape, notwithstanding the fact that the victim could not identify the defendant as the perpetrator); *Commonwealth v. Porter*, 229 Pa.Super. 314, 323 A.2d 128, 131 (1974) (held that evidence stating that blood found at the scene of the crime is found in a relatively small segment of the population, of which defendant is a member, is germane to the issue of identification. This evidence, along with other evidence, was used to affirm the defendant's conviction).

■ In this case, the accomplice's testimony is corroborated by the results of the blood test taken together with the testimony of the victim. This is most clearly demonstrated when focusing on the interplay between the victim's confirmation of the accomplice's incriminating admissions and scientific evidence excluding the accomplice as the rapist, while establishing a high probability that the appellant was the rapist.

For example, the testimony of the accomplice is mirrored by the testimony of the victim. The victim said the crime occurred around 6:30 a.m.; Brian said it happened close to dawn. The victim noticed the interior door to the garage was not locked; Brian indicated this was the door through which he and appellant entered. The victim testified she was ambushed from behind while standing at the intersection of the kitchen and the hallway; Brian said he waited for the victim at that corner. The victim recalled that she was dressed in a bra, panties, panty hose, and a half-slip; Brian testified that she was wearing a bra, panties, a slip and panty hose. The victim testified she heard her daughter enter the hallway; Brian stated he saw the baby come out of the hallway.

After being knocked to the floor, the victim stated that her eyes were covered with a jacket; Brian testified that appellant covered the victim's head with "some type of clothing." The victim stated the two men scuffled and that one left the room while the other sexually assaulted her; Brian testified he attempted to prevent the rape and struggled with appellant before leaving the room. The victim stated the intruders found guns under her bed; Brian admitted his brother stole some guns. The victim testified she was tied up with wire and left on the bed; Brian testified appellant tied her legs with telephone cord and left her on the bed.

In summary, the victim corroborates Brian's testimony on almost every point. This strong corroboration enhances the credibility of Brian's testimony.

The scientific evidence positively excluded Brian as the rapist while tending, by probability, to incriminate appellant. In

short, appellant was part of the small class of possible donors.

Equally as important, it must be noted that the accomplice is appellant's own brother. There is nothing in the record which would indicate any malice between them. Despite the obvious interest that an individual might have in avoiding a long prison sentence, the jury could well believe this increased the credibility of the accomplice's testimony. Additionally, any theory that Brian lied in order to shift blame for the rape from himself to appellant was refuted by scientific evidence which excluded him as the rapist.

In conclusion, we find the accomplice's testimony was corroborated by inculpatory evidence which tends to connect the appellant with the commission of the rape. We therefore overrule appellant's third point of error.

■ In his first two points of error, appellant contends there is insufficient evidence to support the guilt of both burglary and sexual assault. In support of all three contentions, appellant cites, but does not discuss three cases in a one paragraph argument. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978); *Ex parte Mixon,* 583 S.W.2d 378 (Tex.Crim.App.), *cert. denied sub nom.* 445 U.S. 919, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1979). In this regard the brief violated TEX.R.APP.P. 74(f) which states the brief must discuss "the authorities relied upon as may be requisite to maintain the point at issue." None of these cases discuss sufficiency of the evidence. Instead, each deals with the Double Jeopardy Clause of the United States Constitution.

The testimony itemized above supports the convictions. As a result, we overrule appellant's first and second points of error.

We therefore affirm the judgment of the trial court.