444 So.2d 753 (1984)
STATE of Louisiana
v.
Prentiss TATE.
No. KA 1147.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1984.
*754 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., New Orleans, Harry F. Connick, Dist. Atty., Susan Scott Hunt, Asst. Dist. Atty., New Orleans, for State of La.
William R. Ary, New Orleans, for defendant-appellant.
Before SCHOTT, BARRY and WARD, JJ.
SCHOTT, Judge.
Defendant was charged with possession of pentazocine, hydromorphone and oxycodone, with intent to distribute, in violation of LSA-R.S. 40:967. He originally pled not guilty and filed a motion to suppress the evidence which was denied. He withdrew his plea of not guilty and pled guilty with a reservation of his right to appeal from the denial of his motion to suppress. He was sentenced to four and one-half years at hard labor on each count to run concurrently. The issue is whether the affidavits filed by the police with magistrates were sufficient to justify the issuance of three search warrants.
At issue are two affidavits which led to separate warrants, the first two for searches of Apartments 5 and 10 (sometimes designated as an unnumbered second floor rear apartment) 2105 Thalia Street, New Orleans, and the second for a search of Apartment 6 at the same address. Although defendant attacks all the warrants as violative of the constitutional right against illegal search the main thrust of his argument is in regard to the warrant for the search of Apartment 6.
The affidavit filed with the application for a search warrant for Apartments 5 and 10 was made by Narcotics Officers Wethern and Harris and contained the following pertinent facts: They received information on April 20, 1982, from a confidential informant who had provided information in the past which led to arrests of individuals in New Orleans that defendant was conducting a drug business at 2105 Thalia Street, employing two individuals, "Ben" who sells wholesale quantities out of Apartment 5 and "Country Boy" who sells retail quantities out of Apartment 10. Three days previously the informant had gone to this area to purchase some drugs and he met defendant who directed him to Apartment 5. There the informant found Ben who stated that he had only wholesale quantities which the informant observed in the apartment. However, Ben took him to Apartment 10 where they found "Country Boy" from whom the informant purchased one dilaudid *755 on April 21. The officers established a surveillance of the premises, beginning with Apartment 5. Within forty-five minutes they observed three suspicious transactions or exchanges take place with the occupant of Apartment 5. At 3:10 PM the officers moved to a different vantage point whence they could view Apartment 10 and the intersection of Thalia and Saratoga Streets. Over the next hour they saw three suspicious exchanges taking place at the apartment and in two instances saw defendant participating.
Search warrants were issued by Magistrate Judge Hansen on April 23 and a search of the apartments was conducted at 4:30 PM. Nothing was found in Apartment 5, but drugs, a weapon, ammunition, and $975 in currency were found in Apartment 10. Defendant was arrested at 1329 Saratoga, a residence next door to the apartment building.
At 7:25 PM on April 23, the officers went before Magistrate Kiefer to obtain a search warrant for Apartment 6. Their affidavit contained the following: Earlier that day they had obtained from Judge Hansen a search warrant for Apartment 10 and at 4:30 PM executed the warrant at which time they arrested defendant and another charging them with possession of dilaudid, talwin and marijuana, with intent to distribute in violation of R.S. 40:967. While they were executing the warrant Sergeant John Evans of the Police came to the scene to assist them. Evans was familiar with the subjects and told the officers that within the past three days he had spoken to a confidential informant whose information in the past had led to the arrest and conviction of criminals distributing narcotics in the city. This informant stated that defendant was retailing and wholesaling drugs from Apartment 10 and also mentioned that defendant maintained a second apartment in the building, Apartment 6, to store the drugs. Evans further stated that he had kept Apartment 6 under surveillance between 1:30 and 2:15 PM on April 22, and had seen defendant enter the apartment (after looking about as if to determine whether he was under observation) and exit with a small brown paper bag. Later Evans saw defendant re-enter Apartment 6 (again after peering about) holding an unknown amount of currency and exit in possession of a plastic bag (again peering about). The officers then contacted the apartment owner and learned that defendant was lessee of Apartments 10 and 6.
A search warrant was issued by Magistrate Kiefer and a search of Apartment 6 was conducted, yielding a quantity of narcotics and $674 in currency.
Defendant argues in general that the warrants do not meet the requirements of Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and State v. Paciera, 290 So.2d 681 (La.1974). He argues specifically that the search warrant for Apartment 6 was defective because the affidavit supporting it and filed with Magistrate Kiefer omitted certain facts which were made known to Judge Hansen: that Apartment 5 had been searched and nothing found, that "Ben" had never surfaced, and that defendant was not arrested at 2105 Thalia but at his home on Saratoga Street around the corner. Furthermore, Sgt. Evans' informant did not say he had ever been in Apartment 6 or made any purchase there. His conclusions were based on rumors.
The "two-pronged test" of Aguilar and Spinelli has been abandoned and replaced by the totality of the circumstances analysis in order to determine probable cause. Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983):
".... The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had *756 a `substantial basis for .... conclud[ing]' that probable cause existed." 103 S.Ct. at 2332.
Both affidavits meet this test. The veracity of the informants was supported by the knowledge that they had supplied reliable information in the past. In both affidavits the information supplied by the informants was corroborated by the officers' observations of activities and behavior on the part of defendant which provided a fair probability that evidence of crimes would be found in all three apartments. As to the affidavit regarding Apartment 6 any deficiency resulting from the informant's statement was supplied by the officers' investigation. They saw defendant engaged in suspicious activity, they learned that he was the lessee of both Apartments 10 and 6, and they had already seized large quantities of drugs from Apartment 10 when they applied for the warrant in connection with Apartment 6. The totality of the circumstances set forth in the affidavit was sufficient to establish probable cause in the mind of Magistrate Kiefer as he made a practical, common sense decision.
As to the omitted facts, we are satisfied that the omission was not intentional or calculated to mislead or conceal information from the magistrate. When the affidavit is considered as though the omitted facts were included we conclude that there would have been probable cause for the issuance of the warrant in the light of the added facts. State v. Lehnen, 403 So.2d 683 (La.1981).
Although we have concluded that defendant's assignment of error is without merit, in our review of this record for errors patent we have determined that the sentence imposed on the defendant was too lenient under the statutory limitations. The minimum sentence provided by R.S. 40:967 B(1) for possession of a Schedule II narcotic drug with intent to distribute is five years. Thus, defendant's sentence to 4½ years each for the hydromorphone and the oxycodone was less than the minimum. Although the imposition of a sentence which is illegal because it is more lenient than the legislature prescribed for the crime would seem to require a remand for re-sentencing, under State v. Napoli, 437 So.2d 868 (1983), we have no alternative but to affirm the sentence.
Accordingly, defendant's conviction and sentence are affirmed.
AFFIRMED.