446 So.2d 479 (1984)
STATE of Louisiana
v.
Alex WRIGHT.
No. KA-1181.
Court of Appeal of Louisiana, Fourth Circuit.
February 9, 1984.
*481 William J. Guste, Jr., Atty. Gen., and Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty. and Joanne C. Marier, Asst. Dist. Atty., New Orleans, for appellee.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for appellant.
Before SCHOTT, KLEES and CIACCIO, JJ.
CIACCIO, Judge.
Defendant, Alex Wright, was charged with armed robbery and was convicted as charged. R.S. 14:64. He was sentenced to serve twenty-five (25) years in the custody of the Louisiana Department of Corrections. The defendant appeals his conviction relying on two (2) assignments of error. We affirm the defendant's conviction, amend his sentence and, as amended, the sentence is affirmed.
The facts are not in dispute:
On December 29, 1976, Carolyn Riehm and Patricia Davis were employed as tellers with the Fifth District Homestead at 512 Verret Street in Algiers. At approximately 11:30 a.m. on that day, Ms. Davis was seated at her desk behind the banking counter when she saw a man approach. There was one other customer in the Homestead at the time. When she went to the counter to assist the would be customer, she was told that it was a robbery. Patricia Davis did not respond quickly and the male subject pulled a gun from his belt and pointed it at her. Ms. Davis then opened her cash drawer as the defendant placed a bag on the counter. When she experienced difficulty in opening the bag, the male subject placed the gun in his pocket and opened the bag. The teller then placed the money in the bag. The subject inquired whether there were other money drawers. After answering affirmatively, Ms. Davis walked to the next money drawer and emptied it. The male subject then placed the bag of money containing $8,755.00 under his arm and walked out of the Homestead. Ms. Davis had pulled the money clip which set off the alarm system and which placed the surveillance camera into operation.
Carolyn Riehm, another teller at the Homestead, was assisting a customer when she observed the subject of the robbery enter the Homestead. She next observed her fellow teller as she placed money in a bag and it was at this time that Ms. Riehm realized it was a robbery. She pulled the money clip in the cash drawer which released the alarm and the camera over the front door of the Homestead.
Sergeant Roland Foreman of the New Orleans Police Department detective bureau was assigned to investigate this case. He interviewed Ms. Davis and Ms. Riehm regarding the incident and he received a description of the perpetrator of the crime. He observed a film cartridge being removed from the surveillance camera in the Homestead. The film was taken by Officer Ortigue to the police department's crime lab for developing. There were approximately eight photographs depicting different poses of the perpetrator of the offense. Sergeant Foreman then had 120 copies made of the photos and the copies were distributed to the various police districts, along with a memo prepared by Foreman. Sergeant Forman took six photographs to the Homestead, and upon viewing them, Carolyn Riehm and Patricia Davis each tentatively identified the photograph of Alex Wright as being the likeness of the person who had committed the armed robbery of December 29, 1976.
Assignment of Error No. 1
The defendant excepts and assigns error to the trial court's finding that he was sane. He also assigns error to the court's refusal to appoint a second lunacy commission to examine him. In support of this position, counsel for the defendant argues that the defendant's disruptive and incoherent behavior and his failure to communicate made it impossible for him to assist in *482 his own defense. Defendant also argues that the trial judge's desire to clear his docket of this old case was the overriding factor in the judge's finding of sanity and denial of the defense motion for a new lunacy hearing.
Mental incapacity to proceed exists when, as a result of mental disease or defect the defendant lacks the capacity to understand the proceedings against him or to assist in his defense. C.Cr.P. Art. 641. State v. Brogdon, 426 So.2d 158 (La., 1983). The court shall therefore order a mental examination of the defendant when it has reason to doubt his mental capacity to proceed. C.Cr.P. Art. 643. The appointment of a sanity commission rests within the sound discretion of the trial judge and it will not be disturbed on appeal absent a clear abuse of discretion. State v. Wilkerson, 403 So.2d 652 (La., 1981). For the purpose of the insanity defense the burden is on the defendant to prove by a preponderance of the evidence that he was insane at the time of the offense and that he suffered from a mental disease or defect which rendered him incapable of distinguishing right from wrong. State v. Brogden, supra; State v. Machon, 410 So.2d 1065 (La., 1982). The determination of the trial judge as to the defendant's competency to stand trial is entitled to great weight on review and it will not be overturned absent an abuse of discretion. State v. Brogdon, supra.
At the proceedings of the sanity hearing, Dr. Kenneth Ritter, a psychiatrist, testified that he examined the defendant on May 11, 1982. Dr. Ignatio Medina, a psychiatrist, also examined the defendant. A report dated May 16, 1982 resulted from the two examinations and a consultation between the physicians. Dr. Ritter testified that he found that the defendant was competent to proceed to trial, that he understood the nature of the charges against him and he could aid in his own defense. He further testified that he found that the defendant was neither psychotic nor mentally retarded, nor did he suffer from a mental illness or defect. The defendant had no history of psychiatric examination nor treatment. He did, however, find that the defendant had an anti-social personality and he was a drug habitate. Counsel stipulated that, if called, Dr. Medina would testify to the same findings. Based upon the medical findings of Dr. Ritter, the court found the defendant competent to stand trial.
Under these circumstances we cannot say that the court erred in refusing a defense motion for a second lunacy hearing. Defendant made no showing that a second hearing was warranted.
Although the record reveals a desire by the trial judge to clear his docket, there is no evidence that this was a factor in his refusal to grant the defendant's motion for a second commission hearing. Rather, a clear legal basis for the decision existed, that is, that the court appointed commission had found the defendant competent and there were no grounds to doubt the defendant's mental capacity to proceed. C.Cr.P. Art. 643.
This assignment of error lacks merit.
Assignment of Error No. 2
The defendant, through this assignment, contends that the trial court erred in admitting certain hearsay statements into evidence. He further contends that the prejudicial effect of the statement warrants a reversal of his conviction.
The line of questioning to which the defendant objects in this assignment concerns an alleged conversation between Sergeant Foreman and the defendant's father while Sergeant Foreman was attempting to execute a search warrant on the former residence of the defendant. Over the objections of defendant, Sergeant Foreman testified that a .38 caliber blue steel revolver, a plaid suit and green V neck sweater worn by the robbery suspect (and which were the object of the search warrant) had been at the residence because the defendant's father told him so.
In State v. Martin, the Louisiana Supreme Court discussed the issue of hearsay evidence:

*483 Hearsay evidence is testimony in court, or written evidence, of an out-of-court statement offered to show the truth of the matter asserted therein and resting its value upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978); McCormick on Evidence, Sec. 246 (2d ed. 1972); Pugh, Louisiana Evidence Law, 387 (1974). The traditional exclusion of hearsay evidence is based upon considerations of unreliability and of potential unfairness to the accused to permit the introduction of out-of-court statements which cannot be tested by cross-examination of the out-of-court declarant. State v. English, 367 So.2d 815 (La.1979); State v. Ford, 336 So.2d 817 (La.1976). For these reasons, hearsay evidence is inadmissible in Louisiana criminal trials unless otherwise provided by law. LSA-R.S. 15:434. 376 So.2d 300 at 308 (La., 1979).
In this case, the statement made by Sergeant Foreman and attributed to the defendant's father was clearly hearsay evidence and as such, should have been excluded. Accordingly, the trial court erred in admitting this statement into evidence over the objections of the defendant.
Not every error by a trial court constitutes reversable error. In order to lead to a reversal, an error must affect the substantive rights of the accused. C.Cr.P. Art. 921. See: State v. Boudreaux, 396 So.2d 1303 (La., 1981). In the instant case the admissibility of the evidence could act to deprive the defendant of a substantial right guaranteed to him by the United States Constitution, Sixth Amendment, that is, the right to confront witnesses against him. In order to determine if the error is harmless we must first consider the test established for evaluating "harmless error." The test was set forth by the Louisiana Supreme Court in State v. Gibson, 391 So.2d 421 at 428 (La., 1981).
It appears that the Chapman test, i.e., "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and that "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt," will assist this Court to fulfill both of the requirements of state law. (Quoting Chapman v. California, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967)
A further consideration is whether the error was cured, that is, whether other evidence of the truth of the out-of-court statement exists, in that the speaker was present for cross-examination or there was independent evidence which confirmed the hearsay. See: State v. Banks, 439 So.2d 407 (La., 1982).
The importance of the hearsay testimony, in this case, was that it linked the physical items to this defendant and this defendant to the crime scene. However, our review of the record indicates that there exists other evidence of the truth of the out-of-court statement, that is, independent evidence existed which confirmed the hearsay. State Exhibit # 1 was a photograph of the defendant, as he appeared, in the bank, on the day of the robbery. Additionally, the victim of the robbery, Patricia Davis, positively identified the defendant in court as being the man who robbed her and the man in State Exhibit # 1. She testified that at the time of the robbery he had a big gun with a long barrel. Additionally, she stated that during the investigation, she tentatively identified a picture of this defendant as the perpetrator of the offense and she gave a description to the police that the robber had on a plaid suit with lines, a green sweater and a tie. Additionally, a fellow bank teller, Carolyn Riehms, also testified that this defendant was the man in the picture in State Exhibit # 1 and the man who robbed the Homestead on December 27, 1976.
Under the circumstances we do not find that there is a reasonable possibility that the evidence complained of might have contributed to this conviction. Considering the independent evidence which confirmed the hearsay we conclude beyond a reasonable doubt that the error was harmless.
Assignment of Error No. 2 lacks merit.
*484 We have reviewed this case in order to determine if the State has proven its case beyond a reasonable doubt. The standard for this review is whether a rational trier of fact, when viewing the evidence in the light most favorable to the prosecution could have found that the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (U.S., 1979). State v. Edwards, 400 So.2d 1370 (La., 1981).
In this case the accused was charged with the commission of an armed robbery. R.S. 14:64(A)
Armed robbery is defined in LSA-R.S. 14:64 Section A:
"Armed robbery is the theft of anything of value from the person of another or which is in the immediate control of another by the use of force or intimidation, while armed with a dangerous weapon."
In this case the record reveals that eye witness testimony established that the defendant entered the Homestead, demanded money while threatening the teller with a revolver and then fled the Homestead with a bag containing $8,755.00.
Therefore, the totality of the evidence when viewed in the light most favorable to the prosecution satisfies this Court that any rational trier of fact could have found that the State proved the essential elements of the crime beyond a reasonable doubt.
Our review of the record reveals an error in sentencing. No other errors discoverable by a mere inspection of the pleadings and proceedings have been found. La.C. Cr.P. Art. 920(2).
One found guilty of the crime of armed robbery shall be subject to the following sentence:
R.S. 14:64(B):
"Whoever commits the crime of armed robbery should be imprisoned at hard labor for not less than five years and for not more than ninety-nine years without benefit of parole, probation or suspension of sentence."
The record fails to reveal that the sentence is to be served "without the benefit of probation, parole or suspension of sentence", as required by statute. R.S. 14:64(B). The Louisiana Supreme Court has held that the omission of this restriction will render a sentence "unlawfully lenient." State v. Telsee, 425 So.2d 1251 (La., 1983). Although the subsequent case of State v. Napoli, 437 So.2d 868 (La., 1983) appears to be in conflict with Telsee, supra, we adopt the rationale utilized by our brethern of the First Circuit, who followed the Telsee approach in the cases of State v. Jackson, 439 So.2d 622 (La.App., 1st Cir., 1983); State v. Thomas, 439 So.2d 629 (La.App., 1st Cir., 1983); State v. Johnson, 439 So.2d 636 (La.App., 1st Cir., 1983).
Accordingly, we find that Wright's sentence is illegally lenient and we, therefore, amend the sentence to add the provision that this sentence shall be served "without the benefit of probation, parole or suspension of sentence." R.S. 14:64(B).
For the reasons assigned, the defendant's conviction is affirmed. The sentence is amended to provide that the defendant shall serve twenty-five (25) years in the custody of the Louisiana Department of Corrections, without the benefit of probation, parole or suspension of sentence; and as amended, the sentence is affirmed.
CONVICTION AFFIRMED. SENTENCE AMENDED AND AS AMENDED IS AFFIRMED.
SCHOTT, J., dissenting in part.
SCHOTT, Judge, dissenting in part:
I concur with the majority in all respects except the amendment of defendant's sentence. Faced with a definitive ruling by the Supreme Court in State v. Napoli, 437 So.2d 868 (La.1983) that an illegally lenient sentence cannot be corrected when the defendant alone seeks review, we are not at liberty to disregard that ruling and follow conflicting opinions of another court of appeal. We have no alternative but to defer to the Supreme Court as we did in State v. *485 Barber, 445 So.2d 463 (La.App. 4th Cir. 1984) and State v. Tate, 444 So.2d 753 (La.App. 4th Cir.1984) where the same question was before us and we reluctantly followed State v. Napoli, supra.