DOUCET, Judge.
Defendant, Joseph Narcisse, was charged by bill of information with possession of a firearm by a person convicted of a certain enumerated felony (aggravated battery), a violation of La.R.S. 14:95.1. Following a bench trial defendant was found guilty and sentenced to serve three years at hard labor without benefit of probation, parole, or suspension of sentence.
Defendant was arrested on May 27,1986 and charged with being a convicted felon in possession of a firearm. The arrest took *566 place in the parking lot of a Lafayette business at approximately 5:00 p.m. The arresting officers had in their possession an arrest warrant naming defendant as the perpetrator of the alleged offense. Officer Ned Craft, together with several other officers, approached the defendant. Officer Craft identified himself and advised the defendant he was being placed under arrest for being a convicted felon in possession of a firearm. He read the defendant his “Miranda rights” then handcuffed him and placed him into a police unit. Subsequently defendant was furnished with a rights form which he signed acknowledging that he understood his rights. Officer Craft testified that he then advised the defendant they were looking for “a firearm” and the defendant replied, “that he knew what firearm I was referring to and that it was behind the seat of his truck stuck into some springs.” Officer Craft further testified that the defendant referred to the firearm as his. Apparently there was no reference by Officer Craft or the defendant to any specific firearm.
At approximately 5:30 p.m. the defendant was presented with, and signed, a form signifying his consent to a police search of his pickup truck. Defendant was escorted to his truck whereupon he gestured towards the rear of the seat, informing the officers that, “it’s right there behind the seat stuck right in the spring.” The officers however, were unable to locate the firearm whereupon the defendant stated that, “someone must have stolen my gun.” Defendant was subsequently transported to the police annex where Officer Craft assisted in the booking and processing.
Officer Craft testified that, later that evening, outside the Lafayette Parish Correctional Center, the defendant’s wife approached Officer Craft and Officer John Johnson to inquire into the reason for her husband’s arrest. At this time counsel for defendant objected to Officer Craft's re-countance of the substance of any statements made to him by Mrs. Narcisse on the grounds that his testimony would constitute inadmissible hearsay. The trial judge at first sustained the objection but later reversed his ruling finding that the statements made by Mrs. Narcisse formed a part of the res gestae. The officer then testified that, upon being informed of the offense for which her husband had been arrested, Mrs.. Narcisse stated that the defendant did have a gun and that she was in possession of the box and bullets for that gun. Officer Johnson later testified that Mrs. Narcisse also stated that the defendant kept his gun in his truck. The same objection was made to this testimony and it was overruled on the same grounds.
Officer Craft informed Mrs. Narcisse that he would like the box and cartridges but advised her that she did not have to give them to him. Mrs. Narcisse decided to turn the objects over to the authorities and she and her daughter, accompanied by Officer Johnson, went to her home on West End in Lafayette where she retrieved the evidence. Recovered was a manufacturer’s box for a Harrington and Richardson (H & R) .32 caliber revolver with the serial number 179049 written on the label. Also recovered were two boxes containing .32 caliber cartridges. . No firearm was ever recovered.
At trial true copies of a bill of information, plea of guilty form signed by the defendant, and the minutes of court for July 22,1980 were introduced into evidence to establish that defendant had been previously convicted of aggravated battery. At that time, it was also stipulated by counsel for defendant that the defendant was the same person named in those documents and had previously been convicted of aggravated battery.
Douglas Dalme was called to testify on behalf of the State. Mr. Dalme was employed by Bell’s Sporting Goods and had been. in charge of firearms transactions since 1980. In conjunction with the testimony of this witness there was introduced into evidence a U.S. Department of Treasury, Bureau of Alcohol, Tobacco and Firearms, Form 4473, Firearms Transaction Record (Form 4473), which must be completed in part by the seller and in part by the purchaser of a firearm in an intra-state over-the-counter sale. This particular Form 4473 recorded the sale on December *567 17, 1981, of a .32 caliber, H & R revolver, serial number AX179049 to a Joseph Narcisse.
Mr. Dalme, who did not make this particular sale or fill out this particular Form 4473, testified concerning the procedure involved in purchasing a firearm and completing the required form. He stated that, at Bell’s, the Form 4473 is prepared by the salesperson contemporaneous with the sale of the firearm. The salesperson enters all of the information off of the firearm including the model and serial numbers under Section B of the form. The buyer must furnish identification and it is noted, also under Section B, what type of identification is furnished. The form contains, under Section A, space for the purchaser’s name, address, height, weight, race, date and place of birth. The form itself specifically states that Section A “must be completed personally” by the buyer. The instructions on the rear of the form state that the “buyer (transferee) of a firearm will, in every instance, personally complete Section A of the form ...” Mr. Dalme however, testified that at Bell’s, this personal information is copied by the salesperson onto the form under Section A from the identification furnished by the purchaser. He testified that the buyer answers, with either a yes or a no, eight questions and then signs and dates the form.
The Form 4473 introduced in evidence lists the buyer as Joseph Narcisse, his address as 114 West End, Lafayette, La., and the other pertinent personal information. The identification furnished was listed as a Louisiana Driver’s license. The form was signed “Joseph E. Narcisse.” The salesperson who made that particular sale no longer worked at Bell’s and Mr. Dalme had no personal knowledge regarding the purchaser of the listed weapon or of the circumstances surrounding the sale.
Thurmond Williams testified that the defendant had been living with him and his wife, at the time of trial, for about three years. During the time defendant lived with him, Mr. Williams stated that he had never seen the defendant with a firearm. However, on one occasion in 1985, when the defendant was in the hospital, the witness found a revolver wrapped in a towel in the apartment. He testified that it looked like a .32 caliber revolver but could not say so for certain because he did not examine the firearm closely. There was no testimony regarding the location of the firearm when it was discovered. The witness had not seen the firearm before that time and did not see it again. He stated that his wife did not own a gun but admitted that another person may also have been living with he and his wife at the time he discovered the firearm. Edna Williams, the witness’s wife, testified that she never saw defendant with a firearm during the time he lived with them nor had she any knowledge of him owning or possessing one.
At the time of trial the defendant and his wife were in the process of obtaining a legal separation. They had apparently been living apart, he with Mr. and Mrs. Williams, she on West End Street, for a little over two years at the time of his arrest. Mrs. Narcisse was called as a witness by the State but invoked her spousal immunity privilege under La.R.S. 15:461(2), refusing to testify against the defendant.
On appeal defendant claims three assignments of error, one of which we find dis-positive.
Defendant claims that the trial court erred in admitting in evidence hearsay testimony regarding the substance of the statements made by Mrs. Narcisse to police officers on the evening her husband was arrested. This assignment of error is primarily directed to the statement by her that the defendant had a gun and that she had the box and cartridges for that gun.
Defendant objected to the hearsay testimony of Officers Craft and Johnson regarding this statement made by Mrs. Narcisse. The trial judge at first sustained the objection even after initial argument by the State that the statement was part of the res gestae and therefore admissible. The state then furnished the court with a copy of State v. Pilcher, 104 So. 717, 158 La. 791 (1925) and on the basis of the court’s holding in Pilcher, the trial judge reversed his ruling and overruled defendant’s objection. *568 This was done after counsel for defendant, having been given the opportunity to respond, was unable to find another case either citing Pilcher or overruling it.
Hearsay is in court testimony concerning the contents of a statement made out of court which is offered in evidence to prove the truth of the matter asserted therein and resting for its value upon the credibility of the out of court declarant. State v. Martin, 458 So.2d 454 (La.1984). The testimony of Officers Craft and Johnson concerning the substance of the statements made by Mrs. Narcisse was offered in evidence to prove that defendant owned, and/or possessed at one time, a firearm, the box and cartridges for which were in Mrs. Narcisse’s possession at her residence on West End Street. It has not been argued by the State either at trial or on appeal that such testimony by the officers was not hearsay or that it was not offered to prove the truth of the matter asserted therein.
Hearsay is inadmissible except as provided by statutory or common-law exceptions. La.R.S. 15:434; 15:463; State v. Smith, 285 So.2d 240 (La.1973). The trial court allowed the hearsay testimony at issue into evidence as part of the res gestae exception. La.R.S. 15:447 and 15:448 define and discuss the doctrine of res gestae.
R.S. 15:447:
“Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.”
R.S. 15:448:
“To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.”
The doctrine of res gestae is broad and includes not only spontaneous utterances and declarations made before and after commission of a crime but also includes testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after commission of the crime if a continuous chain of events is evident under the circumstances. State v. Drew, 360 So.2d 500 (La.1978), cert. denied, 439 U.S. 1059, 99 S.Ct. 820, 59 L.Ed.2d 25 (1979); State v. Sercovich, 165 So.2d 301, 246 La. 503 (1964).
In admitting the hearsay evidence as part of the res gestae the trial court relied on the 1925 Pilcher, supra, case. In Pilcher law enforcement officers armed with a search warrant arrived to search a barn for illegal liquor. In reply to a question from the sheriff before the search began, Mrs. Pilcher stated that the barn belonged to her husband. Liquor was discovered and the husband was subsequently arrested. The Supreme Court allowed the sheriff to testify at trial concerning the substance of Mrs. Pilcher’s statement on the grounds that it constituted a part of the res gestae. The court’s decision was based on common-law jurisprudence holding that “whenever evidence of an act [the search] is in itself competent and admissible as a material fact in the case, and is so admitted, the declarations accompanying and characterizing such act become a part of the res gestae of the act as being explanatory of the act.” This must have been the language relied on by the trial judge in the instant case in overruling defendant’s objection.
At trial counsel for defendant could not cite any case overruling Pilcher, supra, and •therefore the trial judge based his ruling on it. However, in a decision rendered the next year, State v. Brown, 109 So. 394,161 La. 704 (1926), the Supreme Court overruled its decision in Pilcher insofar as it held that a statement such as the one made by Mrs. Pilcher formed a part of the res gestae. Had the trial judge in the instant case been aware of the holding in Brown, supra, it must be assumed that he would not have reversed his ruling and that defendant’s objection to the hearsay testimony would have been sustained. We note *569 that in its brief on appeal the state cites only one case — Pilcher.
The following cases, among others, have examined the hearsay rule and the limits of the res gestae exception. In State v. Wright, 446 So.2d 479 (La.App. 4th Cir. 1984) the issue was whether or not a police officer could testify concerning the substance of a statement made by defendant’s father as the officer attempted to execute a search warrant at the father’s residence. The officer testified at trial that the father had told him a gun and certain clothing, the objects of the search, had been at the residence. The appellate court held the officer’s testimony “was clearly hearsay evidence and as such, should have been excluded.”
In State v. Billiot, 421 So.2d 864 (La.1982) defendant made an inculpatory statement in the presence of two female companions who were with him prior and subsequent to his commission of a homicide. At trial the two women testified concerning the substance of the statement which had been made within an hour after the crime was committed. The trial court ruled that the statement was part of the res gestae. On appeal the Supreme Court held that the statement did not form part of the res gestae.
In State v. Gautreaux, 377 So.2d 289 (La.1979) defendant made a statement to a companion that he had killed someone. The statement was made approximately ten to thirty minutes after the crime occurred and the trial court ruled that it was part of the res gestae. On appeal the Supreme Court held that the statement did not form part of the res gestae. The court reasoned:
“Gautreaux’s words were spoken approximately ten to thirty minutes after the stabbing, when the defendant had rejoined a non-participating friend and others and had left the scene, had stopped at a gas station, and was nearly home. His statement did not occur under the immediate pressure of the stabbing but during a laughter-filled post mortem of the fight by the participants. Gautreaux’s statement clearly was not a necessary incident of the criminal act, an immediate concomitant of it, or a declaration which formed in conjunction with it one continuance transaction.”
Concerning the foregoing, we find that the original ruling by the trial judge sustaining defendant’s objection to the testimony of Officer Craft on the grounds that it constituted inadmissible hearsay was correct and that the statements do not form part of the res gestae. Mrs. Narcisse was not with her husband during or after his arrest. By the testimony of the state’s own witness the defendant had not been living with his wife for approximately two and one half years prior to his arrest. She appeared at the penal facility where she apparently believed her husband was being held and by chance encountered Officers Craft and Johnson. There was no evidence as to the time of this encounter other than it was “later that evening” after her husband hád been arrested. The statements made by Mrs. Narcisse to the officers were not necessary incidents of defendant’s alleged offense of possession of a firearm or immediate concomitants of it, nor did they form in conjunction with it one continuous transaction.
Even though possession of a firearm by a convicted felon under La.R.S. 14:95.1 can be considered a continuous offense, after defendant was arrested he was no longer committing the offense. Had authorities recovered the firearm in question later that evening defendant could not have been charged with a second offense. Simply because the evidentiary recovery process may continue after an arrest does not therefore render any statement made during that process by a third party or a defendant himself a part of the res gestae. We find this statement by Mrs. Narcisse does not constitute part of the res gestae and the testimony by Officers Craft and Johnson concerning the substance of the statement was inadmissible hearsay evidence.
Having determined that it was error to admit the hearsay evidence we must deter *570 mine whether the error can be considered harmless.
La.C.Cr.P. art. 921 provides:
“A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights, of the accused.”
The Supreme Court examined art. 921 and the issue of harmless error in State v. Gibson, 391 So.2d 421 (La.1980). The court recognized that La. Const. 1974, art. 5, § 5(C) limits appellate jurisdiction to questions of law in criminal matters. As a result, the court stated, when examining the effect of an error by a trial court, an appellate court is not free to substitute its determination for that of the trier of fact as to what would or should have been decided in the absence of the error. The court went on to adopt the federal harmless error rule as stated and applied by the U.S. Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court stated that this rule would necessarily be followed in cases where a federal constitutional right of the defendant was impinged by the erroneous action of the trial court and that it would be used as a guideline in cases involving only errors of state law. The Gibson, supra, court adopted the Chapman test as follows: (1) “whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction”, and (2) “the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt.” Gibson has since been followed by the courts of this state in determining whether or not an error was harmless. See: State v. Green, 493 So.2d 1178 (La.1986); State v. Banks, 439 So.2d 407 (La.1983); State v. White, 399 So.2d 172 (La.1981); State v. Smith, 489 So.2d 255 (La.App. 5th Cir. 1986); State v. Phillips, 471 So.2d 319 (La.App. 4th Cir.1985).
The admission of hearsay evidence may deprive a defendant of his right to confront the witnesses against him which is guaranteed by the Sixth Amendment to the U.S. Constitution. State v. Wright, supra. Adhering to the views expressed in Gibson, supra, we will necessarily apply the Chapman test to our review of the error by the trial court. In doing so it is recognized by the Gibson court that we must consider the evidence in order to apply the applicable test even though the focus is to be on the incriminating quality of the tainted evidence itself.
The evidence introduced against the defendant included the ATF Form 4473; the defendant’s own statement made at the time of his arrest; the testimony of defendant’s roommate, Mr. Williams; the box and cartridges turned over to the authorities by Mrs. Narcisse; and the hearsay statements themselves.
The ATF Form 4473 is evidence that someone using a Louisiana driver’s license in the name of defendant, and signing defendant’s name, purchased a particular firearm on December 17, 1981. There was no evidence that on December 17, 1981 defendant was living at the address listed on the form or that the defendant himself, or the purchaser of the firearm, matched any of the identifying characteristics listed on the form such as race, height, weight, etc. There was no handwriting comparison evidence introduced comparing the defendant’s handwriting with the signature on the federal form. Mr. Williams could only say that he saw on one occasion, in the two and one-half years that he lived with defendant before his arrest, a revolver that appeared to be a .32 caliber. This occurred at a time when another person may have been living with the witness and his wife in addition to the defendant. During that two and one-half years neither Mr. nor Mrs. Williams ever saw defendant with a gun. At the time of his arrest defendant stated that he had a gun in his truck which was never found. The box for the firearm listed on the Form 4473 was in Mrs. Narcisse’s residence on West End. The address of the listed purchaser, Joseph Narcisse, was 117 West End. There was no evidence introduced however, other than the form itself, that the defendant ever lived on West End. Finally, no gun was ever found.
*571 Examining the statements again, Mrs. Narcisse stated to one and/or both of the officers that: (1) the defendant owned and/or possessed a gun; (2) that she had the box and bullets for that gun in her possession; and (3) that the defendant usually kept that gun in his truck. This is strong evidence that defendant owned and/or possessed the firearm which was purchased from Bell’s Sporting Goods. No other evidence more directly links defendant to that firearm. This is also the only evidence that defendant kept that particular firearm in his truck thus rendering his statement upon arrest extremely inculpato-ry. Clearly, there is a reasonable possibility that this tainted evidence might have contributed to defendant’s conviction and in light of this fact, and the circumstantial evidence as a whole, we are unable to declare a belief that the error was harmless beyond a reasonable doubt.
For the reasons assigned we reverse the conviction and sentence of the defendant and remand this case for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.