537 So.2d 386 (1988)
STATE of Louisiana
v.
Larry N. MULLINS.
No. 88-KA-0146.
Court of Appeal of Louisiana, Fourth Circuit.
December 29, 1988.
*387 William J. Guste, Atty. Gen., Darryl W. Bubrig, Sr., Dist. Atty., Pointe-A-La-Hache, Gilbert V. Andry, III, Asst. Dist. Atty., New Orleans, for plaintiff.
Terry Sercovich, Belle Chasse, for defendant.
Before BARRY, CIACCIO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Defendant, Larry N. Mullins, was indicted for second-degree battery, a violation of La.R.S. 14:34.1. Following a trial by jury defendant was found guilty as charged and was sentenced to serve five years at hard labor. Defendant now appeals raising three assignments of error.
Defendant was convicted of the second-degree battery of his girlfriend, Sheila Tribe, with whom he resided. According to Ms. Tribe, the only witness to testify at trial, the two went out drinking on the night of December 3, 1986. As they were driving home from a barroom the two argued back and forth and slapped each other. Ms. Tribe was not slapping defendant in his face, however, and she didn't specifically state that he was slapping her in the face. Finally, Mrs. Tribe stopped her car and got out. Defendant followed her and grabbed her blouse. The two were still "fighting back and forth" when the defendant punched her in the nose, breaking it. The two drove home, and after the defendant fell asleep, Ms. Tribe first went to her mother's home, then to an area hospital for medical treatment. Ms. Tribe testified that she had not intended to file a criminal complaint but decided to do so after receiving medical treatment. She later attempted to get the District Attorney's Office to drop the charges against the defendant.

ASSIGNMENT OF ERROR NO. 1
Defendant first contends that the trial court erred in admitting copies of the victim's medical records into evidence because the State failed to comply with the procedures outlined in La.R.S. 13:3715.1. The State argues that La.R.S. 13:3715.1 does not apply and that the hospital records were properly admitted under La.R.S. 13:3714. We find merit to defendant's argument.
We first recognize that the victim's hospital records were hearsay evidence. The records were written evidence of out-of-court statements offered to prove the truth of the matter asserted therein. State v. Martin, 458 So.2d 454 (La.1984); State v. Wright, 446 So.2d 479 (La.App. 4th Cir. *388 1984). Hearsay evidence is inadmissible in Louisiana criminal trials unless otherwise provided by law. La.R.S. 15:434; State v. Martin, 376 So.2d 300 (La.1979); State v. Wright, supra.
At the time of the trial[1] La.R.S. 13:3715.1 stated in pertinent part:
"B. When a subpoena duces tecum is served upon the custodian of records or other qualified witness from a hospital or other health care facility in an action in which the hospital or facility is not a party and such subpoena requires the production for trial of all or any part of the records of the hospital or facility relating to the care and treatment of patient in such hospital or facility, it shall be sufficient compliance therewith if the custodian or other officer of the hospital or facility, delivers by registered mail or by hand a true and correct copy of all records described in such subpoena to the clerk of court or other tribunal, or, if there is no clerk, then the court or other tribunal, together with, the affidavit described in Subsection E. Production of the record shall occur prior to the time fixed for the trial, but no earlier than two working days before the trial date. This section is limited to procedures for complying with a subpoena duces tecum for purposes of trial and shall not affect the rights of parties to production of documents pursuant to laws governing discovery or other laws pertaining thereto.
C. The copy of the records shall be separately enclosed in an inner envelope or wrapper and sealed, with the title and number of the action, name of witness, and date of subpoena clearly inscribed thereon. The sealed envelope or wrapper shall then be enclosed in an outer envelope or wrapper, sealed and directed to the clerk of court or tribunal or, if there is no clerk, then to the court or tribunal.
D. Unless the parties to the proceeding otherwise agree, the copy of the records shall remain sealed and shall be opened only at the direction of the judge or tribunal conducting the proceeding.
E. The records shall be accompanied by the affidavit of the custodian or other qualified witness, stating in substance each of the following:
(1) That the affiant is the duly authorized custodian of the records and has authority to certify the records.
(2) That the copy is a true copy of all records described in the subpoena.
(3) That the records were prepared by the personnel of the hospital or facility, staff physicians, or persons acting under the control of either, in the ordinary course of the business of the hospital or facility at or near the time of the act, condition, or event."
In the case at bar the State issued a subpoena duces tecum directed to the medical librarian of Plaquemines Parish General Hospital, ordering that the medical records of Ms. Tribe be produced at the District Attorney's Office on February 24, 1987. These records were produced and seven weeks later the State introduced them into evidence at trial. None of the requirements of La.R.S. 13:3715.1 were complied with, except arguably sections E(2) and (3). Attached to the records was a certification by the hospital administrator, and an employee *389 of the medical records department that the records were true copies of Ms. Tribe's medical records.
The State argues that La.R.S. 13:3715.1 does not apply in this case and that all that was required for admittance into evidence was compliance with La.R.S. 13:3714 which states:
"Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the record is sought to be used may summon and examine those making the original of said record as witnesses under cross-examination."
The certified copy of the hospital records was signed by the hospital administrator and therefore La.R.S. 13:3714 was complied with. Since State v. Kelly, 237 La. 956, 112 So.2d 674 (1959) the Louisiana Supreme Court has applied La.R.S. 13:3714 in criminal as well as civil cases. It has been held that when the formalities prescribed in the statute are followed the medical records are admissible in evidence as an exception to the hearsay rule. State v. Spooner, 368 So.2d 1086 (La.1979); State v. Trahan, 332 So.2d 218 (La.1976).
The cited decisions interpreting La.R.S. 13:3714 were rendered before the 1979 enactment of La.R.S. 13:3715.1. However, even since the enactment of this statute appellate courts have upheld the admissibility of medical records in both civil and criminal cases under the provisions of La. R.S. 13:3714. We have discovered only one decision even mentioning La.R.S. 13:3715.1. In a civil action, Richardson v. Continental Insurance Company, 468 So.2d 675 (La.App. 3rd Cir.1985), the court held that certain medical records were not admissible under either La.R.S. 13:3714 or R.S. 13:3715.1. The stated reason the records were not admissible under La.R.S. 13:3715.1 was because the requirements of Section E had not been complied with. Although La.R.S. 13:3715.1 does not expressly provide that upon compliance with the requirements of the statute the hospital records shall be admitted into evidence, it appears that the legislature intended this to follow.
Certain language contained in La.R. S. 13:3715.1 might arguably be interpreted as indicating that it was intended to be limited to civil actions. First, it applies only to actions in which the records sought are not from a hospital, medical physician or facility which is a party. It is probably the rare criminal prosecution that involves a hospital, medical physician or facility as a party. Section (D) of the statute, by negative implication, allows "the parties to the proceeding" to agree to open the records before trial, and the statute refers to a court or "other tribunal", such as an administrative tribunal. However, even considering this language the wording of the statute applies equally to criminal and civil actions.
Hearsay evidence is generally inadmissible because it is considered unreliable and untrustworthy. La.R.S. 13:3715.1 was obviously designed to insure that accurate medical records are transmitted for use at trial. Following the steps set out in the statute renders the hearsay evidence contained in the hospital records considerably more trustworthy than records similarly introduced under La.R.S. 13:3714 as was done in the case at bar. It tortures logic to reason that higher standards of trustworthiness and accuracy are necessary to cure hearsay evidence in civil cases than in criminal prosecutions where life and liberty are at stake.
We find that La.R.S. 13:3715.1 is applicable to criminal and civil cases. Where, as in the case at bar, the State acquired medical records pursuant to a subpoena duces tecum served on a hospital, it could not introduce those particular records in evidence at trial. Of course the State was entitled to subpoena a copy of the records for trial preparation. But to introduce a copy of the records at trial the State should have issued a second subpoena directing the hospital to strictly follow the formalities prescribed in La.R.S. 13:3715.1, *390 and deliver the records to the clerk of court. The trial court erred by admitting into evidence, over the objections of the defendant, the medical records of Ms. Tribe.
Having found that the trial court erred in admitting the hospital records, we must determine whether the error was harmless. La.C.Cr.P. art. 921 states: "A judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." In State v. Narcisse, 512 So.2d 565 (La.App. 3rd Cir.1987) the court addressed the issue of harmless error, including La.C.Cr.P. art. 921 and the harmless error review standard as adopted by the Louisiana Supreme Court from the U.S. Supreme Court decision in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court stated:
"The Supreme Court examined art. 921 and the issue of harmless error in State v. Gibson, 391 So.2d 421 (La.1980). The court recognized that La. Const.1974, art. 5, § 5(C) limits appellate jurisdiction to questions of law in criminal matters. As a result, the court stated, when examining the effect of an error by a trial court, an appellate court is not free to substitute its determination for that of the trier of fact as to what would or should have been decided in the absence of the error. The court went on to adopt the federal harmless error rule as stated and applied by the U.S. Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The court stated that this rule would necessarily be followed in cases where a federal constitutional right of the defendant was impinged by the erroneous action of the trial court and that it would be used as a guideline in cases involving only errors of state law. The Gibson, supra, court adopted the Chapman test as follows: (1) "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction", and (2) "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." Gibson has since been followed by the courts of this state in determining whether or not an error was harmless. See: State v. Green, 493 So.2d 1178 (La.1986); State v. Banks, 439 So.2d 407 (La.1983); State v. White, 399 So.2d 172 (La.1981); State v. Smith, 489 So.2d 255 (La.App. 5th Cir.1986); State v. Phillips, 471 So. 2d 319 (La.App. 4th Cir.1985)."
In other words, upon finding that a trial court erred, an appellate court may not find the error harmless simply because it finds that the other evidence would have been sufficient to convict the defendant.
The State claims that the defendant was not prejudiced because he was provided a copy of the records and had "every opportunity to subpoena the medical records custodian, and/or physician to dispute the fact that Ms. Tribe suffered a broken nose at the hands of Appellant." We find no merit to this argument. The State had the burden of properly introducing the medical records either under La.R.S. 13:3715.1 or perhaps under the business records exception, by calling the medical records custodian as a witness. The admissibility of hearsay evidence may act to deprive the defendant of a substantial right guaranteed him by the Sixth Amendment to the U.S. Constitution, the right to confront the witnesses against him. State v. Wright, supra; State v. Narcisse, supra. Because a federal constitutional right was or may have been impinged we will strictly apply the Chapman test.
The defendant was convicted for punching Ms. Tribe in her nose and breaking it. This was the second-degree battery. The State had to prove that defendant committed a battery on the victim, without her consent, with the specific intent to inflict serious bodily injury. La.R.S. 14:34.1; State v. Fuller, 414 So.2d 306 (La.1982). The statute defines serious bodily injury as:
"bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or *391 mental faculty, or a substantial risk of death."
Some of the hospital records admitted into evidence relate to Ms. Tribe's treatment for the broken nose. Many of the records, however, detail her treatment for a number of other unrelated injuries and ailments, some dating years back. The relevant records merely confirm the victim's testimonythat the defendant punched her in her nose and broke it. The direct testimony of Ms. Tribe was by far the most damaging and inculpatory evidence presented at trial. Applying the Chapman test we find that there is no reasonable possibility that the hospital records may have contributed to the conviction and that the error by the trial court in admitting them was harmless beyond a reasonable doubt.

ASSIGNMENT OF ERROR NO. 2
Defendant next contends that the evidence was not sufficient to convict him. He specifically argues that the evidence is insufficient to establish that he possessed the requisite specific intent.
As previously discussed, second-degree battery
"is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. La.R.S. 14:34.1."
La.R.S. 14:33 defines battery in pertinent part as the intentional use of force or violence upon the person of another.
Second-degree battery is a specific intent crime. State v. Fuller, supra. La.R.S. 14:10 defines specific intent as
"that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Specific intent need not be proven as fact but may be inferred from the circumstances of the transaction. La.R.S. 15:445. When circumstantial evidence forms the basis of proof, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence must be excluded as to that element of the crime which the circumstantial evidence tends to prove. La.R.S. 15:438. However, this rule of circumstantial evidence does not establish a separate standard of appellate review. State v. Chism, 436 So.2d 464 (La.1983). When assessing the sufficiency of the evidence to support a conviction an appellate court must determine whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 400 So.2d 1370 (La. 1981).
In assessing the sufficiency of the evidence we will consider only the testimony of the victim. This is the only evidence presented at trial by either side, other than the hospital records. The testimony of the victim is sufficient to establish the elements of an offense. State v. Marshall, 479 So.2d 598 (La.App. 1st Cir.1985); State v. Day, 468 So.2d 1336 (La.App. 1st Cir. 1985).
The testimony of the victim was that the defendant grabbed her by the shirt and punched her in her nose, breaking it. Accepting the victim's testimony the defendant clearly committed a battery on the victim he intentionally used force or violence on her person. The testimony of the victim also establishes that she did not consent to this battery. Although they were arguing and slapping each other there is no indication that Ms. Tribe consented to being soundly punched in her nose with enough force as to break it. It also appears that Ms. Tribe wanted to stop the arguing and slapping; this is why she stopped her automobile and got out.
*392 The defendant was six feet tall while the victim stood only five feet five inches. Pretermitting for a moment, discussion of specific intent, we feel that when a larger man punches a smaller woman in her nose with enough force to break it, that bodily injury involves extreme physical pain.
Examining now the issue of specific intent, Ms. Tribe and the defendant were arguing and slapping each other but had apparently not exchanged any severe blows. Ms. Tribe stopped her car, got out, and ran. The defendant ran after her, grabbed her, and punched her in the nose with enough force to break it. It appears that the punch in the nose was the culmination of the argument.
Perhaps the defendant became enraged when Ms. Tribe ran away from him. When he caught up with her he punched her, specifically intending to cause her extreme physical pain, i.e., serious bodily injury. The circumstantial evidence tends to prove that the defendant had the specific intent to inflict serious bodily injury when he punched Ms. Tribe in the nose. Assuming this fact as true it excludes every reasonable hypothesis of innocence.
We find that, viewing the evidence as a whole in a light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime of second-degree battery.

ASSIGNMENT OF ERROR NO. 3
By defendant's last assignment of error he contends that the State improperly referred to the defendant's failure to testify in his own defense. Such comments are prohibited under La.C.Cr.P. art. 770(3).[2] Defendant argues that the following statement by the district attorney in his closing argument raises the improper inference.
"The crime as we mentioned, of course, was battery, which is the intentional use of force or violence upon the person of another. I think we have showed through the only testimony that was presented the force used by the Defendant upon Miss Tribe. And it was the intentional use of force. It was not consented to. They weren't horseplaying. They weren't doing anything like that. There is no doubt that a battery was committed.
Following the close of the State's argument the defendant objected but did not move for a mistrial. The trial court simply overruled the defendant's objection. Comment (b) to La.C.Cr.P. art. 770 states that the failure to move for a mistrial operates as a waiver of error. However, examining this article in State v. Lee, 346 So.2d 682 (La.1977), the Louisiana Supreme Court stated:
"What our rules require is that counsel bring an error to the attention of the trial judge within a reasonable time after the error or declare a mistrial. C.Cr.P. arts. 770, 771, 841. Generally, a contemporaneous objection must be made immediately. In certain instances, however, objections which come shortly thereafter will be considered timely, see State v. Foss, 310 So.2d 573 (La.1975), and there are even instances in which no objections are required because they would be a vain and useless act, see State v. Ervin, supra [340 So.2d 1379 (La.1976)]. Particularly may there be such exceptions to the general rule during closing argument *393 for reasons expressed in the following law review comment:
"one must recognize that the closing argument of the prosecutor may be so permeated with improprieties that constant objections may alienate the jurors or underscore the remark rather than erase it from their minds. Therefore, an objection at the end of the summation should be considered timely, and in some cases should be allowed outside the presence of the jury." [citations omitted] 34 L.L.Rev. 746, 759 (1974).
Moreover, we recognize that a prosecutor's prejudicial comments in closing argument may be considered by a federal court to violate federal due process guarantees even in the absence of a defense challenge or objection at trial. United States v. Briggs, supra [457 F.2d 908 (2nd Cir.1972)]; United States v. Grunberger, 431 F.2d 1062 (2d Cir.1970); United States v. Sawyer 347 F.2d 372 (4th Cir.1965)."
In view of this language we feel that the defendant's objection to the statement, made at the close of the State's argument, was sufficient to preserve the error on appeal. Defendant's failure to move for a mistrial will not preclude us from reviewing this assignment of error.
La.C.Cr.P. art. 770(3) mandates a mistrial whan an indirect reference is intended to draw the jury's attention to the defendant's failure to testify or present evidence. State v. Smith, 433 So.2d 688 (La.1983); State v. Johnson, 426 So.2d 95 (La.1983). In Smith the prosecutor's closing argument included a series of questions regarding the lack of witnesses and evidence presented by the defendant. Reviewing the alleged error the Louisiana Supreme Court stated:
"In our view, the prosecutor's comments were directed to the lack of evidence in the defendant's behalf. Where the defendant himself is not the only witness who might take the stand to refute the state's case, argument to the jury that the state's presentation of the facts is uncontroverted does not focus the jury's attention on the defendant's failure to testify. State v. Latin, 412 So.2d 1357 (La.1982); State v. Perkins, 374 So.2d 1234 (La.1979). There were many witnesses upon whom the defendant could have called to refute the state's case, and the prosecutor's argument focused principally on the uncontroverted nature of the state's presentation of the facts. Even if we were to assume, arguendo, that the state's argument referred obliquely to the defendant's failure to testify, we do not find it plain from the record that the references, if any, were intended to focus the jury's attention on the defendant's failure to testify or present evidence in his behalf. State v. Johnson, supra; cf. State v. Kersey, 406 So.2d 555 (La.1981); State v. Bodley, 394 So.2d 584 (La.1981)."
The defendant distinguishes Smith since at his trial there were no possible witnesses whose testimony the State could have been referring to. The State, however, points out that witnesses could have been called, for example, to testify as to the defendant's non-violent nature. Witnesses in the lounge might have been called to describe how the victim provoked the defendant and medical experts might have been called to minimize the seriousness of the victim's injuries. We note that the Smith court ultimately found that even if the prosecutor indirectly referred to the defendant's failure to testify, there was no evidence that such references were intended to focus the jury's attention on the defendant's failure to testify or present evidence in his defense. In the case at bar we also find that there is no evidence that the prosecutor intended to focus the jury's attention on the defendant's failure to testify.
For the reasons assigned we affirm the conviction and sentence of the defendant.
AFFIRMED.
CIACCIO, J., concurs in the result.
CIACCIO, Judge, concurring in the result.
The analysis of the admissibility of the hospital records is unnecessary and unwarranted, *394 and should be considered as dicta. The holding of the court is that in this case the admission of the records, if error, was harmless because plaintiff testified without contradiction to the only relevant fact contained in the records, i.e. she had a broken nose, and any extraneous information in the records was irrelevant, inconsequential, and did not prejudice defendant in any way. In light of that holding, any discussion on whether the records were properly admitted is meaningless.
I concur in the holdings that admission of the hospital records, if error, was harmless, that the evidence is sufficient to sustain the conviction, and that the complained of remark by the prosecutor was not improper (finding the remark to have been permissible, I would have omitted discussion of whether defendant's objection was timely and proper to preserve the issue for appeal and any discussion of what remedies could have been afforded defendant if the remark had been improper). Accordingly, I concur in affirming defendant's conviction and sentence.
NOTES
[1] In 1987 the legislature amended La.R.S. 13:3715.1(B) to read:

"B. When a subpeona duces tecum is served upon the custodian of records or other qualified witness from a hospital, medical physician's office or clinic or other health care facility in an action in which the hospital, medical physician or facility is not a party and such subpoena requires the production for trial of all or any part of the records of the hospital, medical physician's office or clinic facility it shall be sufficient compliance therewith if the custodian or other officer of the hospital, medical physician's office or clinic or facility, delivers by registered mail or by hand a true and correct copy of all records described in such subpoena to the clerk of court or other tribunal, or, if there is no clerk, then the court or other tribunal, together with the affidavit described in Subsection E of this Section. Production of the record shall occur prior to the time fixed for the trial, but no earlier than two working days before the trial date. This Section is limited to procedures for complying with a subpoena duces tecum for purposes of trial and shall not affect the rights of parties to production of documents pursuant to laws governing discovery or other laws pertaining thereto."
[2] La.C.Cr.P. art. 770 provides that:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury;
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
(3) The failure of the defendant to testify in his own defense; or
(4) The refusal of the judge to direct a verdict. An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial." (emphasis ours)