687 So.2d 1056 (1997)
STATE of Louisiana
v.
Eugene LEWIS, a/k/a Eugene Strickland.
No. 95-KA-0769.
Court of Appeal of Louisiana, Fourth Circuit.
January 10, 1997.
Rehearing Denied February 27, 1997.
*1057 Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, New Orleans, for Plaintiff/Appellee.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for Defendant/Appellant.
Before ARMSTRONG, JONES and MURRAY, JJ.
ARMSTRONG, Judge.
The defendant, Eugene Lewis (a/k/a Eugene Strickland), was charged by grand jury indictment with aggravated rape, aggravated crime against nature and second degree kidnapping, violations of La. R.S. 14:42; 14:89.1; and 14:44.1. The defendant pled not guilty and was tried on November 18-19, 1993, which trial ended in a mistrial for the failure of the trial court to give limiting instructions on Prieur testimony. The defendant was retried on February 7-8, 1994 and found guilty as charged on all three counts. The defendant was subsequently sentenced to life imprisonment on the aggravated rape count, fifteen years at hard labor on the aggravated crime against nature count, and forty years at hard labor on the second degree kidnapping count. All sentences were without benefit of parole, probation or suspension of sentence and were to run concurrent.
*1058 On appeal defense counsel raises four assignments of error and the defendant raises four assignments for error. The record was lodged in this court on April 5, 1995. Pursuant to a pro se writ and subsequent order of this court, OIDP was appointed to represent the appellant. Following considerable supplementation of the record, counsel's brief was filed on February 28, 1996. The appellant filed a supplemental brief pro se on April 1, 1996.

FACTS[1]
On October 2, 1992, the victim, A.J., went with her husband and four children to visit her mother in the St. Bernard Project. After they arrived, the victim and her husband went to a store for snack food. While there, they saw the defendant, whom the victim introduced to her husband. After they got back, the victim went to see some friends she knew from the project.
As the victim left the residence of Rita Grissa, the defendant called to her, "Bitch, come here." The victim first thought the defendant was joking with her, until he pulled a gun out of his jacket. She then thought the defendant was going to rob her, so she began taking off her jewelry. He told her he did not want that. He then walked on the side of her, with his gun in his jacket, to the apartment where he was living. When they got to the apartment there was a couple there, whom he told to get out. They did. The defendant injected himself with drugs and forced the victim to have oral and vaginal intercourse with him. The victim attempted to stall, but the defendant threatened to kill her if she did not do what he asked. The defendant further made the victim get on the floor and pray with him and read from the Bible.
After the rape, the defendant left the apartment with the victim and walked with her until they came upon the victim's husband and younger brother, who were out looking for her. The victim told her husband she wanted to go home right away. Once they were home, the victim told her husband what happened and they called the police.
Detective Matthew Riles interviewed the victim at her home, then took her to the project, where she pointed out the apartment where she was raped. The detective then took the victim to Charity Hospital for a rape examination and prepared a search warrant. After the search warrant was executed and the defendant was detained, the victim was retrieved from the hospital and positively identified the defendant. At trial, the victim identified the defendant's jacket, the weapon retrieved from the defendant's pants at his arrest, and the photo of the dresser from which the defendant obtained his drugs and drug paraphernalia. One article of drug paraphernalia recovered from the apartment, a spoon, tested positive for the presence of cocaine.
The state presented a witness who testified that she had been similarly abducted and raped by the defendant, who injected himself with drugs in the course of the rape and ordered her to pray with him.
The victim admitted that she had had a prior consensual sexual relationship with the defendant, in which she had intercourse with him in exchange for money and drugs. She further testified that she had been convicted on a drug charge. She testified that during her time in jail she decided to turn her life around. She had since gotten married.
Neither the detective who interviewed the victim nor the physician who examined her found any evidence of drug or alcohol use by the victim that night. The victim did have a mark from a needle prick on her ear which was consistent with her testimony that the defendant accidentally pricked her with a syringe as he was moving her from one room to another.
Swabs from the rape kit and the stain on the victim's panties indicated seminal fluid from a secretor of BO type. The defendant is a secretor of BO type and so could not be excluded as a suspect. The physician who examined the victim testified that there was no evidence of trauma in the vaginal area but that this was not unusual in the case of a twenty-six year old woman who had given birth to four children.
*1059 Two defense witnesses testified that the victim was looking for the defendant on the night of the incident relative to drug dealings. A third defense witness testified he saw the defendant and the victim together on the evening of the incident. He further testified that the defendant was with him and his mother that evening until shortly before his arrest.

ERRORS PATENT:
A review of the record indicates no errors patent. Although the minute entry from February 7, 1994, the first day of trial, was not in the record, there is a certification from the court reporter that the appellant was present for trial that date.

ASSIGNMENT OF ERROR NO. ONE:
In the first assignment, counsel for the defendant avers that the trial court erred in granting the State's Prieur motion and allowing evidence of an alleged prior bad act; in denying the defendant's motion for mistrial based on the testimony of the defendant's alleged other crimes; and in denying the request to admonish the jury about the effect of such testimony.
On June 17, 1993, the state filed a notice of intent to use other crimes evidence pursuant to State v. Prieur, 277 So.2d 126 (La.1973), with an incorporated memorandum in support. After a hearing on the motion on June 29, 1993, the trial court granted the state's motion to use evidence of the defendant's prior arrest and conviction.
Louisiana Code of Evidence article 404(B)(1) provides in pertinent part:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceedings.

In the case at bar, the evidence of the prior aggravated rape, aggravated kidnapping and aggravated crime against nature assists in proving intent, preparation, plan and knowledge. Before evidence of other crimes is admitted as proof of intent, three prerequisites must be satisfied: (1) the prior acts must be similar; (2) there must be a real genuine contested issue of intent at trial; and (3) the probative value of the evidence must outweigh its prejudicial effect. State v. Romero, 574 So.2d 330 (La.1990); State v. Kahey, 436 So.2d 475 (La.1983). In addition, there must first be clear and convincing evidence of the commission of the other crimes and the defendant's connection with them. State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Prieur. Further, where the testimony shows that the factual circumstances of the prior acts and the crime charged are virtually identical, the evidence of the other crimes is corroborative of the victim's testimony and establishes a system or plan. State v. Tolliver, 621 So.2d 17 (La.App. 2nd Cir.1993).
In the instant case and the prior case, the defendant knew the victim from the project, caught the victim alone, produced a weapon and forced the victim to walk by his side to an abandoned-looking apartment, which was occupied by another. The weapon in both cases was a silver-colored pistol with a black grip. The victims were taken to an apartment belonging to another which had drug paraphernalia. The victims were forced to pray with the defendant. The defendant raped and forced oral sex on both victims. The defendant injected drugs while holed up with the victims. The victims were held from evening to the next morning then released with threats not to tell anyone.
The defendant pled guilty to the prior offense. Considering the remarkably similar offenses, the testimony relative to the prior offense was properly admitted to show system and intent.
In the second part of this assignment, counsel and the defendant pro se both aver that the defendant was denied a fair trial due to remarks by the witness of other crimes which would be inadmissible under La. C.E. art. 404(B).
*1060 La.C.Cr.P. art. 771 provides for an admonishment in cases which do not mandate a mistrial under La.C.Cr.P. art. 770, as follows:
In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Particularly, the defendant complains of a statement by the victim of the prior offense which occurred during cross-examination, as follows:
Q And, throughout this whole ordeal you thought that Eugene was going to kill you?
A Yes.
Q What made you think that?
A Because of him. Just seeing him and knowing him, and seeing the things that he do people.
Q Did he ever shoot at you?
A No. He never shot at me, but I seen him shoot somebody.
The defense moved for a mistrial, which was denied. The defense then requested an admonishment, which was denied because the court believed it would "amplify" the problem.
An admonishment under Art. 771 is not necessary unless the remark constitutes an unambiguous reference to another crime. State v. Hayes, 414 So.2d 717 (La.1982); State v. Walker, 593 So.2d 818 (La.App. 4th Cir.1992). However, the reference in this case was an unambiguous reference to another crime and an admonishment, at the least, should have been made by the court. However, this remark was elicited by the defense from a lay witness. A mistrial was thus not mandatory. See State v. Jones, 451 So.2d 1181 (La.App. 1st Cir.1984).
Considering the evidence in this case, the error of failure to give an admonishment was harmless beyond a reasonable doubt. State v. Mullins, 537 So.2d 386, 390 (La.App. 4th Cir.1988); State v. Gibson, 391 So.2d 421, 423 (La.1980).
We find no merit to this assignment of error.
ASSIGNMENT OF ERROR NOS. TWO AND FOUR:
By the second assignment counsel claims the trial court erred in granting the state's motion to use the taped testimony of Emelda Sterling against the defendant at trial. By the fourth assignment counsel avers that, due to the unavailability of a transcript as to the testimony of two witnesses regarding the non-appearance of a third witness, which transcript is necessary to the defendant's second assignment of error, the defendant has been denied his right to due process and appeal.
As noted by the court in State v. Kaufman, 304 So.2d 300 (La.1974), the purpose of the constitutional right of confrontation is to insure that the witness will give statements under oath, thus impressing the witness with the seriousness of the matter and guarding against a lie by the possibility of a penalty for perjury, to force the witness to submit to cross-examination, and to permit the jury to observe the demeanor of the witness in making the statement, thus aiding the jury in assessing credibility. That considered, the court issued the following criteria necessary for the use of recorded testimony: 1) the defendant must have been represented by counsel at the earlier hearing; 2) the witness must have testified under oath; 3) the witness must have been cross-examined, or else there must have been a valid waiver of the right to cross-examination; 4) the witness must have been *1061 unavailable or unable to testify at time of trial; and 5) the state must have made a good faith diligent effort to obtain the presence of the witness.
The defendant argues that the last two criteria were not met relative to the witness, Emelda Sterling. Out of the presence of the jury, the court heard testimony from three witnesses relative to the state's efforts to locate Ms. Sterling. Only the testimony of Detective Warren Fitzgerald is contained in the record.[2]
As noted in State v. Robinson, 387 So.2d 1143, 1144 (La.1980):
La. Const.1974, Art. 1, § 19 provides that the review under an appeal of right from a felony conviction (accorded by Art. 5, § 5(D)(2)) shall be "based upon a complete record of all evidence upon which the judgment is based". The Supreme Court of the United States has also recognized the right to a complete transcript of the trial proceedings, particularly when (as here) counsel on appeal was not counsel at the trial. Hardy v. United States, 375 U.S. 277, 84 S.Ct. 424, 11 L.Ed.2d 331 (1964).
The purpose of the constitutional and codal (C.Cr.P. art. 843) requirement of recording all proceedings in felony cases is to make it possible for a party to support assignments of error on appellate review. When a portion of the trial has not been recorded, a party cannot perfect assignments of error which occurred during that portion of the trial, and the appellate court cannot review any such errors pursuant to C.Cr.P. art. 920 in order to insure that the trial was properly conducted. State v. Ford, 338 So.2d 107 (La.1976).
The Robinson court further noted that the Ford decision did not require a retrial if there is only a slight inaccuracy or an inconsequential omission in the record. In the Robinson case it was determined that the missing transcript of two expert witnesses was key to the issue of whether the anal intercourse was voluntary. The case was therefore reversed.
In the instant case, the missing transcript concerns the availability of a witness and the diligence of the state in its efforts to locate the witness. Det. Fitzgerald testified that he was able to speak to Ms. Sterling at or near her residence, by phone and in court. He further noted that, as the time for the trial neared, Ms. Sterling became more fearful. An instanter subpoena was issued on the day of trial, but Ms. Sterling was not at home.
It is apparent from the officer's testimony that Ms. Sterling was avoiding the police because she was afraid to testify. The court made a factual determination that the state had exercised due diligence in its attempt to locate Ms. Sterling. The state was then permitted to play the tape of her testimony from the prior trial.
Ms. Sterling testified that she saw the victim on the porch of an area known for drugs. She called out to the victim, who did not respond. She further testified that there was a man standing behind the victim. She testified that she was worried about the victim being in that area. The victim testified that she tried to call out to Ms. Sterling. Although Sterling's testimony was inconsistent with the victim's, it did suggest that the victim was acting strangely, which would lead the jury to conclude that she was taken to the area against her will. However, the state's case did not hinge on this testimony. In addition, the court may find that the testimony of Det. Fitzgerald was sufficient to determine that Ms. Sterling was unavailable to testify after due diligence by the state, in which case the testimony of Ms. Sterling was properly admitted.
*1062 We find no merit to these assignments of error.

ASSIGNMENT OF ERROR NO. THREE:
By this assignment defense counsel avers that the state violated the prohibition against double jeopardy in charging and convicting the defendant with both aggravated rape and second degree kidnapping.
This court discussed the standard for double jeopardy in State v. Woods, 94-2650, p.2 (La.App. 4th Cir. 4/20/95), 654 So.2d 809, 811, writ den., 95-1252 (La.6/30/95), 657 So.2d 1035, as follows:
Both the Louisiana and United States Constitutions prohibit placing a person twice in jeopardy of life or limb for the same offense. United States Constitution, Amendment 5; Louisiana Constitution of 1974, Art. 1, Sect. 15; see also C.Cr.P. art. 596. In Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the United States Supreme Court held that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. This test was affirmed by the Court in United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Additionally, Louisiana applies the "same evidence" test, a "broader test" than the federal Blockburger test. State v. Steele, 387 So.2d 1175 (1980); State v. Roy Warner, supra [653 So.2d 57 (1995)]; State v. Smith, 94-0621 (La.App. 4th Cir. 12/15/94), 647 So.2d 1321; State v. Williams, 92-2080 (La.App. 4th Cir. 12/15/94), 647 So.2d 1244. In order for double jeopardy to occur, the evidence required to support a finding of guilt of one crime must also support conviction of the other, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.
The bill of indictment for second degree kidnapping under which the defendant was charged alleges that the defendant committed second degree kidnapping by the forcible seizing and carrying of the victim from one place to another while armed with a dangerous weapon "and/or" while the victim was sexually abused. La. R.S. 14:44.1(A) lists the aggravating factors of second degree kidnapping in the disjunctive. Thus, the state only had to prove that the defendant was armed with a dangerous weapon or that he sexually abused the victim. Because the state proved that the defendant was armed with a dangerous weapon, the evidence of sexual abuse necessary for the rape conviction was not necessary to prove the kidnapping charge. Conversely, the evidence of kidnapping was not necessary to prove the sexual offenses. Therefore there was no double jeopardy by punishing the defendant on both the kidnapping and the sexual offenses.
We find no merit to this assignment of error.
ASSIGNMENT OF ERROR NO. FIVE:
The defendant pro se argues that the trial court erred in failing to give the jury a proper limiting instruction on "other crimes evidence," relative to the testimony of Ida Francis. At the conclusion of Ms. Francis's testimony, defense counsel requested a limiting instruction and the court complied as follows:
BY THE COURT:
Ladies and gentlemen, in this type of evidence, the law permits it to be introduced, and it is entitled, "Other crimes, wrongs, or acts".
Evidence of a person's character or a trait of his character is inadmissible or not admissible for the purposes of proving that he acted in conformity therewith or on a particular occasion; except it may be admissible for the purpose of evidence of a pattern, a system, or an intent.
Counselor, do you want me to charge them in any other way in that regard with a limited instruction?
BY MR. ATKINS:
No, Your Honor.
While the instruction does not word-for-word track the language of the statute, La. C.E. art. 404(B)(1), when taken as a whole, *1063 it is sufficient for a jury to understand the limited purpose of other crimes evidence. In addition, counsel did not object to the instruction, so any inaccuracies in the instruction are waived. La.C.Cr.P. art. 841.
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. SIX:
By this assignment the defendant pro se argues that the trial court erred by allowing the prosecutor to elicit prejudicial statements and hearsay testimony from the alleged victim. The defendant argues that the court further erred by permitting the prosecutor to ask leading questions of the victim.
Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted. La. C.E. art. 801(C). The statements repeated by the victim in her testimony were things which were said during the offense, which were the "spontaneous words and acts of the participants," and "which [were] necessary incidents of the criminal act." La. C.E. art. 801(D)(4). The statements were not presented for the truth of the matter asserted and, thus, do not constitute hearsay. Because they were not hearsay statements, they were properly admitted.
As to the prosecutor leading the witness, it was not done to any significant extent, nor did it supply any answers for the witness.
The defendant further complains of the victim's prejudicial statement that he pulled a gun on her friend Tamika Richardson when she saw him earlier in the day. No objection to that testimony was raised by the defense, thus no admonishment was necessary.
We find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. SEVEN:
By this assignment the defendant argues that the trial court erred in allowing the prosecutor to question a defense witness about pending charges in another section of court. La. C.E. art. 609.1(B) provides:
Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
The testimony in controversy occurred on cross-examination, when the prosecutor asked the witness how he happened to come to defense counsel. The witness explained that he was there about his own case, when something came up about the defendant. The questioning continued as follows:
Q Was he handling your drug case?
A Yeah.
Q Is that a drug case here?
A In this section?
Q In this building?
A Yes, sir.
Q What section of court is that?
A Section "H"?
Q Yes.
Q Is that with Judge McKay?
A Yes, sir.
Q And how much drugs do they have you charged with?
At this point, counsel objected and the objection was sustained. After some questioning about a prior relationship between the witness and the victim, the prosecution referred again to the case in Section "H" and said "that's a conviction, isn't it?" The witness replied that it was not. At this point defense counsel approached and requested a mistrial. At the conclusion of the witness's testimony, a bench conference was held on the matter. During that conference, defense counsel noted the case of State v. Felix, 556 So.2d 1317 (La.App. 3d Cir.1990), in which the reference to an arrest was held to require a mandatory mistrial. However, that case, and other cases cited therein, require mandatory mistrial under La.C.Cr.P. art. 770(2), as a remark made by district attorney referring to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.
The reference in this case was to an arrest of a defense witness. The bench conference further reveals that the witness had a conviction in another section, such that the prosecutor's reference, though improper, may have been in good faith. However, since a mistrial *1064 is not mandatory where the reference is not to a crime alleged to have been committed by a witness, the issue is subject to harmless error analysis. Considering the evidence in this case, there is no reasonable probability that this error contributed to the verdict and, thus, the error was harmless beyond a reasonable doubt. State v. Mullins, 537 So.2d 386, 390 (La.App. 4th Cir. 1988); State v. Gibson, 391 So.2d 421, 423 (La.1980).

ASSIGNMENT OF ERROR NO. EIGHT:
By this assignment the defendant avers that the trial court erred by allowing the prosecutor to replace several jurors who had already been picked and empaneled on the jury. The record indicates that, during the opening statement of the prosecutor, one of the jurors, Mr. Arnold Tillman, asked to approach the bench. A conference was then had at the bench and continued in chambers with the juror and counsel. The juror informed the court that, after hearing the defendant referred to by his nickname "Genie" in the opening statement, he realized that he knew something about the defendant. Defense counsel then asked the juror what he had heard about the defendant. The juror replied that the "word on the street" was that "Genie" was connected with the murder of certain people and that nobody would testify against him.
Although it is not reflected in the record, the alternate was apparently substituted for juror Tillman. The juror sheet indicates only that juror Tillman was excused for cause. Considering that Tillman's knowledge of the defendant was unfavorable, there was no prejudice in his removal from the panel. Certification from the court reporter indicates that there were no other substitutions on the jury panel.
We find no merit to this assignment of error.
For the foregoing reasons we affirm the defendant's conviction and sentences.
AFFIRMED.
JONES, J., concurs in the result.
NOTES
[1] To protect victim's privacy, her name is not used in the body of this opinion.
[2] The major portion of this trial was recorded and transcribed by court reporter "A." Court reporter "B" sat in for "A" for the testimony of three witnesses. The trial court minute entry indicates that two witnesses, Officer Keith Valteau and Assistant District Attorney Scott Gardner, gave testimony and were cross-examined by the defense. By letter to this court, court reporter "A" advises that both court reporter "B" and herself have made an extensive search of all their notes and tapes relative to the case for that date and neither have any tapes or notes of any such testimony being given by either of the two named individuals. Further, court reporter "A" avers her belief that the trial judge "had a conference with the two individuals in his office and off the record, therefore no such transcript exists or is available."