J^MIRIAM G. WALTZER, Judge.
The defendant, Erran Evans, appeals his conviction and sentence for first degree murder.
STATEMENT OF CASE
On 29 August 1996, the defendant, Er-ran Evans, was indicted for the first degree murder of Ngu Nguyen during the perpetration or attempted perpetration of an armed robbery in violation of LSA-R.S. 14:3o.[1] Evans entered a plea of not guilty at his arraignment on 11 October 1996. He filed discovery and suppression motions on 22 October 1996. Hearings on the motions were conducted on 3 January 1997, 29 August 1997, and 13 October 1998. The trial court denied his motions to suppress evidence and statements. His motion to suppress identification was denied in part and granted in part. On 28 October 1998, the trial court conducted a hearing on the State’s Notice of Intent to Introduce Other Crimes Evidence. The trial court granted the State’s motion in part and denied the motion in part. After a three-day jury trial, the jury found Evans guilty as charged on 10 November 1999. The penalty phase was then conducted, and the jury | ^recommended a sentence of life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. On 21 January 2000, the trial court denied defendant’s motion for new trial. Evans waived delays and was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence.

STATEMENT OF FACT

Detective Norman Pierce testified that on 27 November 1994, he responded to a call at 2730 Philip Street, Lee’s Grocery. When he arrived on the scene, he observed a puddle of blood and some clothing approximately six feet inside the front of the grocery store. The cash register was to the left of the entrance. The door by the cash register had been kicked in. The officer learned that the victim had been taken to Charity Hospital. Detective Pierce supervised the collection of evidence on the scene. A spent .380 pellet and a .380 casing were found on the scene. Other items collected included the victim’s clothing, glasses and slippers as well as a Snickers candy box, a brown paper bag and a piece of cardboard. Detective Pierce also showed photographic lineups to Lanettar McCloud, Kelly Jones and Char *1208 lene Weber. All three women identified Evans as the perpetrator. McCloud also identified Fenisha Blunt as the defendant’s accomplice. The officer then obtained arrest warrants for Evans and Blunt.
Lanettar McCloud was with her friends, Kelly, Charlene and Kay, on the afternoon of 27 November 1994. They had attended a second line parade and stopped at the grocery store on the parade route to get snacks and drinks. The owner of the store was only letting a few people in at a time. Kay and Charlene went into the store first. Lanettar and Kelly went in a few minutes later. McCloud stated that she was near the cooler when she heard a gunshot. She turned around and saw a man, later identified as Evans, ^standing near the front door with a gun in his hand. McCloud ran to the end of the aisle. A woman, later identified as Fenisha Blunt, approached her and told her to turn over her money and jewelry. McCloud complied with Blunt’s request. Blunt told Evans “Bay, come on. Bay, hurry up. You taking too long.” Evans and Blunt then left the store. Blunt was not armed. When the witness and her friends walked to the front of the store, they saw the victim lying on the floor. McCloud testified at trial that Evans was wearing a security outfit. She identified Evans at trial and in a photographic lineup. She also identified Blunt in a photographic lineup. McCloud stated that she was positive of her identifications.
Kelly Jones was at the cash register with her friend Charlene when a woman standing behind her told Charlene to give up her money. She then heard a gunshot and turned around. She saw a man standing near the front door holding a gun. As the man walked towards the cash register, she and Charlene ran to the back of the store. The man took money from the register. The woman walked to the rear of the store and told them to turn over their money and jewelry. Jones and her friend gave the woman their money and jewelry. The woman then told the man “I have it, Bay. Let’s go. I have it.” The witness stated that the woman was not armed. Jones identified Evans at trial and in a photographic lineup as the perpetrator.
Dr. Paul McGarry, a forensic pathologist with the Orleans Parish Coroner’s Office, performed an autopsy on the victim. Dr. McGarry testified that the victim- suffered a close range gunshot that entered the center of the chest and exited the center of the back. The bullet went through the aorta and struck the right lung and the left rib. The cause of death was massive blood loss from internal bleeding. Dr. McGarry testified that the |4perpetrator was probably taller than the victim, who was five feet three inches tall.
Sgt. Robert Murphy, a deputy with the Jefferson Parish Sheriffs Office, testified that he participated in the defendant’s and Blunt’s arrest on 1 December 1994. At approximately 7:15 p.m., the officer heard a dispatch concerning an abandoned vehicle. When he arrived on the scene, he saw the abandoned vehicle. As he approached the vehicle, he noticed that the hood was up and Evans appeared to be working on the engine near the battery. The officer thought that Evans was trying to steal the battery and was going to run. As the officer got closer to the car, he ordered Evans to place his hands on the car. Evans complied with his request. At that time, Blunt told the officer that they were picking up a baby. Blunt was facing the vehicle and as she turned, she put her hand in her waistband and then took it out and pointed at the officer. At first, the officer thought that she had a gun. The officer then told Blunt to place her hands on the car. A back up unit then arrived on the scene. Sgt. Murphy testified that *1209 Blunt pulled down her pants and urinated on the ground. The officer noticed that Blunt had a gun in the ankle of her sweat pants. The weapon was a .380 caliber automatic.
Detective Larry Leslie testified that he assisted in the homicide investigation. He went to the grocery store the day after the shooting and recovered a bullet found by the victim’s relatives.
Louise Waltzer, a firearms examiner with the Jefferson Parish Sheriffs Office, testified that she examined the .380 automatic weapon found on Blunt and the spent bullet found at the grocery store after the shooting. Through testing and examination, Waltzer was able to determine that the bullet was fired from the weapon.
| ¡¡Timothy Seuzeneau, a forensic light examiner with the Orleans Parish Crime Lab in 1994, examined several items for fingerprints. The officer stated that he conducted tests on a .380 casing, a brown paper bag, a Snicker candy box and a piece of cardboard. All items were negative for identifiable latent prints.
Detective Ralph Sacks of the Jefferson Parish Sheriffs Office was also involved in the defendant’s arrest on 1 December 1994. The officer handled the arrangements of towing the vehicle to the detective bureau for further investigation. Two handguns were recovered on the scene, a .380 Davis and a nine-millimeter Astra. The .380 was found on Blunt. The other weapon was found underneath a discarded refrigerator. The weapon was found when the refrigerator was moved in order to tow the vehicle.
Fenisha Blunt testified that she has known Evans for five years. They dated from September of 1994 to December of 1994. She acknowledged prior convictions for solicitation, prostitution, and armed robbery. She admitted that she entered into a plea agreement with the State in which she would plead guilty to manslaughter and would be sentenced to forty years at hard labor if she testified truthfully at trial. Blunt testified that on 27 November 1994, she and Evans were at the his brother’s house when they decided to go to the store. Before getting to the store, Evans stopped and picked up a security jacket. When they arrived at the grocery store, Evans put on the security jacket. They attempted to go in but the victim was only letting a few people in the store at a time. The victim let Blunt into the store with three women in front of her. When the victim saw Evans standing by himself, Evans was allowed in the store. After the victim let Evans in the store, Blunt heard a gunshot. She turned around and saw Evans standing over the man with a black gun in his hand. Blunt testified that she knew | r,Evans was armed when they went into the store. Evans told her to “get the things off of the girls.” Evans went behind the counter and took money out of the cash register. She took jewelry and money from the women in the store. Evans took the man’s gun out of his waistband, and then Blunt and he left the store. They returned to his brother’s house where Evans and his brother sorted the money and jewelry. Later that day, she and Evans went shopping.
A few days later, Blunt and Evans were arrested in Jefferson Parish. On 1 December 1994, they were driving a Cadillac when they had car trouble. The Cadillac needed a new battery. Evans broke into another car and stole a battery. Evans was putting the battery in the Cadillac when the police arrived. She did not see the police arrive as the hood was up. When Evans saw the police, he told her to get out of the car and shoot at the police. She did not comply with his demand. Blunt testified that when the officer ap *1210 proached them, he said “Do ya’ll know that this ear belonged to somebody that was killed the night before?” Blunt acknowledged that she had the black .380 automatic in her pants. The gun fell out of her pants when she pulled her pants down to urinate. The gun was recovered by the police officers
Blunt further testified that she and Evans had drug problems. They both used cocaine and Evans also used heroin. They had smoked crack cocaine on the day of the robbery and shooting. Blunt denied ever shooting anyone. She denied knowing someone by the name of Lisa Lee.
Officer Terrance Allen, a crime scene technician with the New Orleans Police Department Crime Lab, testified that several items were recovered at the crime scene on 27 November 1994. These items included a Snickers candy box, a brown paper bag, one CCI .380 spent casing, one pair 17of leather slippers, one pair of blood stained eyeglasses, one blood stained short sleeve blue shirt and one latent fingerprint taken from the cash register.
Sandra West testified that she is employed by Dr. Kevin Bianchini, a neurop-sychologist. She assists him with the administering of psychological tests. Dr. Bianchini had asked her to administer certain exercises to the defendant. These exercises were conducted on 2 November 1999, at Orleans Parish Prison for approximately five hours. During the course of the exercises, West noted that Evans wrote with his left hand. On cross-examination, West acknowledged that a person could be ambidextrous.
Lisa Lee testified that she and Fenisha Blunt were in jail together. After both women were released from jail, Blunt went to Lee’s residence one night to visit. Blunt asked to use the restroom. When Blunt came out of the bathroom, she was holding a gun in her hand. Blunt told Lee to turn over all money and jewelry or Blunt would shoot Lee. Lee thought Blunt was joking and said no. Blunt shot Lee in the leg. Blunt then took jewelry from Lee and Lee’s daughter and left. Lee’s neighbors called the police and she was taken to the hospital. Lee identified Blunt in a photographic lineup while in the hospital. Lee also identified Blunt at trial.
Keiosha Lee, Lisa Lee’s daughter, testified that she was twelve years old when Blunt shot her mother. She was at home with her mother when Blunt came to the house. She saw Blunt shoot her mother in the leg. Keiosha Lee stated that Blunt took jewelry from her and her mother. Keiosha Lee identified Blunt at trial. ERRORS PATENT
A review of the record for errors patent reveals none.
1 ASSIGNMENT OF ERROR NUMBER 1
Evans argues in his first assignment that the trial court erred when it denied his motion for a mistrial based upon the State’s introduction of other crimes evidence. Evans objected when Fenisha Blunt testified about the circumstances surrounding their arrest in Jefferson Parish. Blunt testified that the Cadillac that they were driving needed a battery so Evans went around the corner and stole a battery from another car. She also stated that when the police approached them, Evans told her to take the gun and shoot the police officer. Later, Blunt testified that the police officer said “Do ya’ll know that this car belonged to somebody that was lolled the night the night before that?” She testified that she and Evans only knew about what happened the day they were arrested.
A conference was held in the judge’s chambers after Blunt testified. Evans objected to Blunt’s statement, that he told *1211 her to shoot the police officer, as inadmissible other crimes evidence and requested a mistrial. The trial court denied the motion for mistrial but offered to admonish the jury. However, Evans eventually decided that an admonition was not needed.
As noted in State v. Burton, 98-0096 pp. 6-7 (La.App. 4 Cir. 9/1/99), 746 So.2d 74, 78-79:
Generally, evidence of other crimes, wrongs or acts is inadmissible. However, La. C.E. article 404(B)(1) provides that evidence of other crimes may “be admissible ... when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.” [footnote omitted] Evidence of other crimes is admissible when it is related to and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Parker, 96-1852 (La.App. 4 Cir. 6/18/97), 696 So.2d 599, writ denied, 97-1953 (La.1/9/98), 705 So.2d 1097; State v. Brewington, 601 So.2d 656 (La.1992).
bin any event, the failure to grant a mistrial which is warranted under LSA-C.Cr.P. art. 770 is subject to a harmless error review. In State v. Snyder, 98-1078 p. 15 (La.4/14/99), 750 So.2d 832, 845, the Court set forth the harmless error standard:
To determine whether an error is harmless, the proper analysis is “not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” State v. Bourque, 622 So.2d 198, 241 n. 20 (quoting Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).
When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant, as to which evidence is not admissible, the defendant’s remedy is a request for an admonition or a mistrial pursuant to LSA-C.Cr.P. art. 771. The remark or comment must constitute an unambiguous reference to other crimes. State v. Lewis, 95-0769, p. 7 (La.App. 4 Cir. 1/10/97), 687 So.2d 1056. Upon request by the defendant, the trial court shall admonish the jury to disregard such remark or comment. LSA-C.Cr.P. art. 771. Upon motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant of a fair trial. Id. The granting of a mistrial under LSA-C.Cr.P. art. 771 is at the discretion of the trial court, and a mistrial should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Smith, 418 So.2d 515, 522 (La.1982); State v. Allen, 94-1895, p. 9 (La.App. 4 Cir. 9/15/95), 661 So.2d 1078. “Mistrial is a drastic remedy, and is warranted only when the defendant has suffered substantial prejudice such that he cannot receive a fair trial.” State v. Wessinger, 98-1234, p. 24 (La. 5/28/99), 736 So.2d 162, 183, cert. denied, Wessinger v. Louisiana, 528 U.S. 1050, 120 S.Ct. 589, 145 L.Ed.2d 489 (1999). “The determination of whether actual prejudice has occurred, and thus whether a mistrial is warranted, lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that discretion.” Id.
Blunt makes reference to three other possible crimes during her testimony, namely, the theft of the battery, the suggested shooting of the police officer, and the murder of the owner of the Cad- *1212 iliac. While these comments were made during defendant’s detention and arrest, these references cannot be considered as res gestae. The detention and arrest occurred four days after the shooting and in a completely different location. While the statements should not have been admitted, the trial court did not err when it denied the defendant’s motion for a mistrial. The statements, taken in totality with all other evidence, did not cause Evans to suffer substantial prejudice such that he could not receive a fair trial. The trial court offered to admonish the jury but Evans declined the trial court’s offer.
Moreover, these statements do not warrant reversal of the defendant’s conviction as the testimony overwhelmingly established defendant’s involvement in the shooting. Lanettar McCloud and Kelly Jones both identified Evans as the person they observed standing over the victim with the gun. Both women testified about the defendant’s participation in the armed robbery and the shooting. Blunt also testified that Evans was the person who shot the victim. The evidence of the defendant’s guilt was overwhelming such that the statements concerning other crimes did not contribute to the jury’s verdict.
^Furthermore, it should be noted that Evans allowed testimony from Lisa Lee concerning his and Blunt’s involvement in the murder of the minister. Lisa Lee testified that the police showed her a photographic lineup, which included Blunt’s picture, after Blunt’s arrest for the murder of the minister. Evans elicited this testimony on direct examination and did not object to the witness’ statement. Evans also did not object to Sgt. Murphy’s testimony that Evans appeared to be stealing a battery when he arrived on the scene. Thus, Evans presented similar evidence to the jury without objection.
This assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 2

Evans also contends that the State failed to produce sufficient evidence to sustain his conviction for first degree murder.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. LSA-R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror l^could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
First degree murder is defined, in pertinent part, as “the killing of a human being ... [w]hen the offender has the specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of armed robbery.” LSA-R.S. 14:30(1). The eyewitnesses to the shooting testified that Ev *1213 ans shot the victim while he and Blunt were robbing the store. Lanettar McCloud and Kelly Jones stated that immediately after hearing the gunshot, they turned around and saw Evans standing over the victim with a gun in his hand. Kelly Jones further stated that after Evans shot the victim, he went to the cash register and took money out of the register. Both women testified that Blunt took their money and jewelry. The women identified Evans in a photographic lineup and at trial as the perpetrator. They stated that they were positive of their identification. Fenisha Blunt also testified about her and the defendant’s involvement in shooting. Blunt stated that she entered the store before Evans. Immediately after entering the store, she heard a gunshot. When she turned around, she saw Evans standing over the victim with a gun. Blunt stated that she knew Evans was armed when they entered the store. After shooting the victim, Evans proceeded to take money out of the cash register. Evans told Blunt to take money and jewelry from the store’s customers. When she finished collecting the money and jewelry from the women, she and Evans left the store. The testimony produced by the State proves, beyond a reasonable doubt, that Evans shot and killed the victim during the perpetration of an armed robbery. The evidence was sufficient [1sto sustain the defendant’s conviction for first degree murder.
This assignment is without merit.
CONCLUSION
Accordingly, Evans’ conviction and sentence are affirmed.
AFFIRMED.

. Fenisha Blunt was charged in the same indictment for the first-degree murder of Ngu Nguyen. On 15 December 1999, the State amended the bill to charge Blunt with manslaughter. On the same date, Blunt pled to manslaughter and was sentenced to forty years at hard labor. Blunt testified against Evans at trial.